DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Lawrence County Common Pleas Court summary judgment that denied the City of Ironton, defendant below and appellant herein, sovereign immunity under R.C. Chapter 2744 for the injuries Barbara S. Martin, plaintiff below and appellee herein, suffered in a car accident that Danny Lee Johnson, an Ironton police officer, allegedly negligently caused.[1] *Page 2 
 {¶ 2} Appellant raises the following assignments of error for review:
 FIRST ASSIGNMENT OF ERROR:
 "WHETHER THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT DEFENDANT-APPELLANT CITY OF IRONTON'S MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF SOVEREIGN IMMUNITY UNDER CHAPTER 2744 OF THE OHIO REVISED CODE."
 SECOND ASSIGNMENT OF ERROR:
 "WHETHER THE TRIAL COURT ERRED WHEN IT HELD THAT OFFICER JOHNSON WAS NEGLIGENT."
 {¶ 3} On September 10, 2004, appellee suffered injuries in a car accident with Ironton Police Officer Danny Lee Johnson. Appellee had been traveling north on South 9th Street when Officer Johnson allegedly failed to properly yield the right of way at a stop sign. At the time of the accident, Officer Johnson was operating his police cruiser and responding to a request to assist a Lawrence County Sheriffs Deputy.
 {¶ 4} Appellee filed a complaint against appellant and Danny Lee Johnson. Appellant and Johnson subsequently requested summary judgment and asserted that they are entitled to sovereign immunity.
 {¶ 5} On October 9, 2007, the trial court granted appellant's summary judgment motion as it related to the officer, but denied the motion with respect to the City of Ironton. The court concluded that the officer was not on an "emergency call." The court found that the officer:
 "was en route to assist a deputy sheriff in helping a father locate the residence location of his children. The dispatcher's log shows that his was a request, not on an emergency basis, but for assistance in locating a residence. There is no indication that Officer Johnson was attempting to get to the residence in an expedited fashion or had any reason to disobey a traffic control device or go through an intersection against oncoming traffic. In fact, officer Johnson's testimony reveals that he was simply negligent with regard to failing to effectively look to see Ms. Martin's *Page 3 
vehicle prior to entering the intersection after stopping at a stop sign. Failing to see what is there available to be seen is negligence."
The court concluded that "merely having directions given by a dispatcher over the air waves to assist in finding an address [does not] make
this a `call to duty' such that the city should be immune from suit." This appeal followed.
 I {¶ 6} In its first assignment of error, appellant asserts that the trial court erred by denying it summary judgment. In particular, appellant contends that the trial court improperly determined that it was not entitled to sovereign immunity because the court wrongly concluded that the officer was not on an "emergency call" at the time of the accident.
 A STANDARD OF REVIEW {¶ 7} Appellate courts review trial court summary judgment decisions de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,671 N.E.2d 241. Accordingly, appellate courts must independently review the record to determine if summary judgment is appropriate. In other words, appellate courts need not defer to trial court summary judgment decisions. See Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711, 622 N.E.2d 1153; Morehead v. Conley (1991),75 Ohio App.3d 409, 411-412, 599 N.E.2d 786. Thus, to determine whether a trial court properly awarded summary judgment, an appellate court must review the Civ. R. 56 summary judgment standard as well as the applicable law. Civ. R. 56(C) provides:
 Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue *Page 4 
as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
 {¶ 8} Accordingly, trial courts may not grant summary judgment unless the evidence demonstrates that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and after viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997),77 Ohio St.3d 421, 429-430, 674 N.E.2d 1164.
 B SOVEREIGN IMMUNITY {¶ 9} R.C. Chapter 2744 establishes a three-step analysis for determining whether a political subdivision is immune from liability. See Cramer v. Auglaize Acres, 113 Ohio St.3d 266, 270, 2007-Ohio-1946,865 N.E.2d 9, at ¶ 14; Cater v. Cleveland (1998), 83 Ohio St.3d 24, 28,697 N.E.2d 610. First, R.C. 2744.02(A)(1) sets forth the general rule that a political subdivision is immune from tort liability for acts or omissions connected with governmental or proprietary functions. SeeCramer; Colbert v. Cleveland, 99 Ohio St.3d 215, 2003-Ohio-3319,790 N.E.2d 781, at ¶ 7; Harp v. Cleveland Hts. (2000), 87 Ohio St.3d 506,509, 721 N.E.2d 1020. Second, R.C. 2744.02(B) lists five exceptions to the general immunity granted to political subdivisions under R.C. 2744.02(A)(1). See Cramer; Ryll v. Columbus Fireworks Display Co., *Page 5 95 Ohio St.3d 467, 470, 2002-Ohio-2584, 769 N.E.2d 372, at TJ25. Finally, R.C. 2744.03(A) sets forth several defenses that a political subdivision may assert if R.C. 2744.02(B) imposes liability. See Cramer;Colbert at ¶ 9. Whether a political subdivision is entitled to statutory immunity under Chapter 2744 presents a question of law. See, e.g.,Conley v. Shearer (1992), 64 Ohio St.3d 284, 292, 595 N.E.2d 862;Murray v. Chillicothe, Ross App. No. 05CA2819, 2005-Ohio-5864, at ¶ 11.
 {¶ 10} In the case at bar, the parties do not dispute whether appellant is initially entitled to immunity under R.C. 2744.02(A). Instead, the parties dispute whether the R.C. 2744.02(B)(1)(a) exception to immunity applies. That statute provides:
 * * * [A] political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
 (1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:
 (a) A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct[.]
 {¶ 11} R.C. 2744.01(A) defines an "emergency call" as "a call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer." Thus, "[g]enerally, a political subdivision will not be liable for damages caused by a police officer's negligent operation of a motor vehicle if the officer was responding to an emergency call at the time of the accident."Colbert, at ¶ 1. "The issue of whether an officer is on an *Page 6 
emergency call may be determined as a matter of law when triable questions of fact are not present." Howe v. Henry Cty. Commrs.,167 Ohio App.3d 865, 2006-Ohio-3893, 857 N.E.2d 664, at ¶ 13.
 {¶ 12} In Colbert, the Ohio Supreme Court construed R.C. 2744.02(B)(1)(a) and the definition of the term "emergency call."
In Colbert, two police officers observed what they believed to be a drug transaction and followed the suspects' vehicle. Along the way, they were involved in a car accident with Colbert. Colbert filed a complaint against the City of Cleveland and alleged that the police officer negligently operated his police cruiser, resulting in Colbert's injury. The trial court concluded that because the officers were responding to an "emergency call," the city was entitled to sovereign immunity. The court thus granted the city summary judgment.
 {¶ 13} On appeal, Colbert argued that "emergency call" meant only inherently dangerous situations. The Ohio Supreme Court disagreed, however. The court examined the meaning of "emergency call" and stated:
 "R.C. 2744.01(A) states that `emergency call' means `a call to duty.' `Duty' is defined as `obligatory tasks, conduct, service, or functions enjoined by order or usage according to rank, occupation, or profession.' Webster's Third New International Dictionary (1986) 705. Thus, a `call to duty' involves a situation to which a response by a peace officer is required by the officer's professional obligation."
Id. at ¶ 13. The court further observed that R.C. 2744.01(A) sets forth a non-exhaustive list of examples constituting an "emergency call" and that the statutory definition was not intended to be all-encompassing. Id. at ¶¶ 14 and 15. The court *Page 7 
therefore defined an "emergency call" to include situations where "a response by a peace officer is required by the officer's professional obligation." Id. at ¶ 15.
 {¶ 14} Having defined "emergency call," the Ohio Supreme Court concluded that the Cleveland police officers were on an "emergency call" at the time of the accident. The court explained:
 "While on patrol, Officers Connors and Shay spotted what appeared to be the purchase of some object by persons in a car from a person on foot. The purchase took place in a high-crime, high-drug area in the early morning hours. Thus, the officers believed that they had just witnessed a drug deal and proceeded in their patrol car to intercept the suspects. The need to investigate this possible criminal act was a call to duty. Thus, the officers were responding to an emergency call when their patrol car collided with Colbert's car."
Id. at ¶ 16.
 {¶ 15} Since Colbert, other Ohio appellate courts have considered the "emergency call" issue when deciding immunity from liability under R.C. 2744.02(B)(1)(a). See, e.g., Cunningham v. Akron, Summit App. No. 22818,2006-Ohio-519 (officers on an "emergency call" while following a vehicle that they observed run a red light and vehicle attempted to elude them);Rutledge v. O'Toole, Cuyahoga App. No. 84843, 2005-Ohio-1010
(transporting an arrestee constitutes an "emergency call" because it was a situation that required the officer's response and fell under his professional obligation).
 {¶ 16} In Burnell v. Dulle, 169 Ohio App.3d 792, 2006-Ohio-7044,865 N.E.2d 86, the court determined that the officer was not on an "emergency call" at the time of the accident. In that *Page 8 
case, the officer was on-duty and driving to testify in court. The court recognized the Colbert court's definition of "emergency call," but concluded that the supreme court did not intend to construe it so broadly so as to include a situation where an on-duty officer is en route to testify in court. The court determined that it was not the officer's "professional duty, but his civic duty, to respond to the subpoena. The fact that the subject matter of his testimony involved the officer's official duties does not render driving to the city building to testify about the subject an emergency call. [His] professional obligations were not engaged while he was driving to the courthouse." Id. at ¶ 16.
 {¶ 17} In the case at bar, we agree with appellant that Officer Johnson's activity fell within the Ohio Supreme Court's "emergency call" definition at the time of the accident. Thus, appellant is entitled to sovereign immunity. At the time of the accident, Officer Johnson was responding to a request to assist a Lawrence County Sheriff's Deputy. Part of the officer's professional duty was to respond to requests for assistance. To disregard the request could have constituted a dereliction of duty. See Rutledge, at ¶ 22 (stating that the officer's failure to transport the arrestee could have constituted a dereliction of duty). Under Colbert, it is irrelevant that the situation to which Office Johnson responded did not involve immediacy or inherent danger.
 {¶ 18} We do not believe that the instant action is similar toBurnell, as appellee contends. In Burnell, the court concluded *Page 9 
that the officer was not responding to a situation in his professional capacity, but, instead, was driving to the courthouse to testify as a witness. The court determined that the officer was complying with his civic, not his professional, duty. By contrast, in the case at bar, Officer Johnson was not complying with a civic duty, but instead a professional obligation to assist another law enforcement officer. Consequently, we disagree with appellee that the officer was not on an "emergency call" as the Ohio Supreme Court has defined that term. Although the statute's language may appear to call this conclusion into question, the Ohio Supreme Court has interpreted this statute's language and we, as an intermediate appellate court, are obliged to follow Ohio Supreme Court decisions. Nevertheless, we welcome further scrutiny in this matter.
 {¶ 19} Accordingly, based upon the foregoing reasons, we hereby sustain appellant's first assignment of error.
 II {¶ 20} In its second assignment of error, appellant argues that the trial court erred by finding that the officer was negligent. Appellee candidly concedes that the trial court should not have made a finding regarding the officer's negligence. Because the parties do not dispute this issue, we sustain appellant's second assignment of error.
 {¶ 21} Accordingly, based upon the foregoing reasons, we hereby reverse the trial court's judgment.
 JUDGMENT REVERSED *Page 10 
 JUDGMENT ENTRY
It is ordered that the judgment be reversed and that appellant recover of appellee the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J. McFarland, J.: Concur in Judgment Opinion
[1] Ordinarily, a trial court's decision to deny a party summary judgment is not a final appealable order. However, R.C. 2744.02(C) provides that an order denying a political subdivision the benefit of an alleged immunity is a final appealable order. See Hubbell v. Xenia115 Ohio St.3d 77, 77, 873 N.E.2d 878, 879 (Ohio,2007) *Page 1