COLBERT, APPELLANT, *v.* CITY OF CLEVELAND, APPELLEE, ET AL.

[Cite as *Colbert v. Cleveland,* 99 Ohio St.3d 215, 2003-Ohio-3319.]

(No. 2002–0101—Submitted February 25, 2003—Decided July 9, 2003.)

LUNDBERG STRATTON, J.

## I. Introduction

{¶ 1} Today we are asked to interpret the term "emergency call," as used in R.C. 2744.02(B)(1)(a), which provides a defense to political-subdivision tort liability. Generally, a political subdivision will not be liable for damages caused by a police officer's negligent operation of a motor vehicle if the officer was responding to an emergency call at the time of the accident.

{¶ 2} Appellant, James Colbert, argues that an "emergency call" must involve an inherently dangerous situation to be present. Appellee, the city of Cleveland, argues that an emergency call requires a "call to duty" only. We agree with the city of Cleveland.

## II. Facts

{¶ 3} While on patrol in the early morning hours of December 6, 1998, Officers Daniel Connors and Michael Shay of the Cleveland Police Department observed two white males in a car make an apparent exchange for money with another male on foot on 114th Street in Cleveland. Because this area had a reputation as a "high-drug, high-crime area," the officers believed that they had just witnessed

a drug deal. Accordingly, the officers started out in their patrol car, intending to pursue the suspects' car on a parallel route, but they did not activate their emergency lights or siren or call for backup.

{¶ 4} Officer Connors testified that when the patrol car reached the intersection of 114th and Harvard, he stopped the vehicle and looked both ways. However, upon entering the intersection, the patrol car was struck broadside by a vehicle driven by appellant, James Colbert. Colbert was injured.

{¶ 5} Colbert filed suit against appellee, the city of Cleveland, alleging that Officer Connors had been negligent in operating the patrol car, thereby causing Colbert injury. The trial court granted summary judgment to Cleveland, holding that as a political subdivision, it was immune from liability because its officers were responding to an "emergency call."

{¶ 6} Colbert appealed. The court of appeals held that "emergency call" is broadly defined as a "call to duty" by R.C. 2744.01(A). The appellate court held that observation of a suspected drug deal was a call to duty. Therefore, the appellate court affirmed the trial court's judgment that Cleveland was immune from liability under R.C. 2744.02(B)(1)(a), which establishes a defense to political-subdivision tort liability when a police officer operates a motor vehicle in response to an emergency call. The matter is before this court pursuant to a discretionary appeal.

III. The Law

a. Political–Subdivision Immunity: The Framework

{¶ 7} Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a three-tiered analysis. *Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 556–557, 733 N.E.2d 1141. The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. Id. at 556–557, 733 N.E.2d 1141; R.C. 2744.02(A)(1). However, that immunity is not absolute. R.C. 2744.02(B); *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610.

{¶ 8} The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. Id. at 28, 697 N.E.2d 610. At this tier, the court may also need to determine whether specific defenses to liability for negligent operation of a motor vehicle listed in R.C. 2744.02(B)(1)(a) through (c) apply.

{¶ 9} If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability.

b. Definition of "Emergency Call"

{¶ 10} The dispute in this case is over the definition of the term "emergency call" as used in R.C. 2744.02(B)(1)(a). Pursuant to R.C. 2744.02(B)(1), a political subdivision is generally liable for death or injury caused by the negligent operation of a motor vehicle by one its employees. However, the political subdivision has a full defense to such liability where "[a] member of a municipal corporation police department or any other police agency was operating a vehicle while responding to an *emergency call* and the operation of the vehicle did not constitute willful or wanton conduct." (Emphasis added.) R.C. 2744.02(B)(1)(a). " 'Emergency call' means a call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer." R.C. 2744.01(A).

{¶ 11} Colbert argues that in drafting R.C. 2744.01(A), the General Assembly intended that only those calls to duty that concern inherently dangerous situations qualify as emergency calls. We disagree.

{¶ 12} "In construing a statute, courts have an obligation to give effect to the intention of the General Assembly." *Basic Distrib. Corp. v. Ohio Dept. of Taxation* (2002), 94 Ohio St.3d 287, 291, 762 N.E.2d 979. In determining legislative intent, a court must first look to the language of the statute. *State ex rel. Rose v. Lorain Cty. Bd. of Elections* (2000), 90 Ohio St.3d 229, 231, 736 N.E.2d 886. Courts must give "words used their usual, normal, or customary meaning." *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections* (2000), 88 Ohio St.3d 182, 184, 724 N.E.2d 771, citing R.C. 1.42; *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1997), 77 Ohio St.3d 338, 340, 673 N.E.2d 1351.

{¶ 13} R.C. 2744.01(A) states that "emergency call" means "a *call to duty*." (Emphasis added.) "Duty" is defined as "obligatory tasks, conduct, service, or functions enjoined by order or usage according to rank, occupation, or profession." Webster's Third New International Dictionary (1986) 705. Thus, a "call to duty" involves a situation to which a response by a peace officer is required by the officer's professional obligation.

{¶ 14} Following the term "call to duty," R.C. 2744.01(A) continues with the phrase "*including, but not limited* to, communications from citizens, police dispatches, and personal observations by peace officers of *inherently dangerous situations* that demand an immediate response on the part of a peace officer." (Emphasis added.) The phrase "including, but not limited to," " 'indicates that what follows is a *nonexhaustive* list of *examples*.' " (Emphasis added.) *State v. Thompson* (2001), 92 Ohio St.3d 584, 588, 752 N.E.2d 276, quoting *State v. Lozano* (2001), 90 Ohio St.3d 560, 562, 740 N.E.2d 273. Examples are typically intended to provide illustrations of a term defined in the statute, but do not act as

limitations on that term. Moreover, of the three examples listed in R.C. 2744.01(A), only the third example, "personal observations by peace officers of *inherently dangerous situations* that demand an immediate response on the part of a peace officer," refers to a dangerous situation, thereby indicating that the other listed examples need not involve an inherently dangerous situation. Therefore, we find that the phrase "inherently dangerous situations" places no limitation on the term "call to duty."

{¶ 15} Had the General Assembly intended to limit an emergency call to only those situations that were inherently dangerous, it could have expressly imposed that limitation. Because no such limiting language exists in R.C. 2744.01(A), we will not add it by judicial fiat. Accordingly, we hold that an "emergency call" as defined in R.C. 2744.01(A) involves a situation to which a response by a peace officer is required by the officer's professional obligation.

IV. Conclusion

{¶ 16} Applying this definition, we hold that the officers' investigation of the men suspected of dealing drugs was an "emergency call" as that term is defined in R.C. 2744.01(A). While on patrol, Officers Connors and Shay spotted what appeared to be the purchase of some object by persons in a car from a person on foot. The purchase took place in a high-crime, high-drug area in the early morning hours. Thus, the officers believed that they had just witnessed a drug deal and proceeded in their patrol car to intercept the suspects. The need to investigate this possible criminal act was a call to duty. Thus, the officers were responding to an emergency call when their patrol car collided with Colbert's car. Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

RESNICK, F.E. SWEENEY and O'CONNOR, JJ., concur.

MOYER, C.J., dissents.

PFEIFER, J., dissents.

WISE, J., dissents.

JOHN W. WISE, J., of the Fifth Appellate District, sitting for COOK, J.

---

**PFEIFER, J., dissenting.**

{¶ 17} The parties agree that at about 3:30 a.m. on December 6, 1998, a vehicle driven by James Colbert Jr. struck a vehicle driven by Officer Daniel Connors. The only issue is whether Officer Connors was responding to an emergency call at the time of the collision. If he was, the city of Cleveland is immune from liability.

{¶ 18} As a threshold issue, I believe sovereign immunity is unconstitutional. See *Garrett v. Sandusky* (1994), 68 Ohio St.3d 139, 141, 624 N.E.2d 704 (Pfeifer, J., dissenting). Accordingly, I would hold that Cleveland is not immune from liability in this case.

{¶ 19} However, since a majority of this court does not agree with me, it is necessary to discuss whether Officer Connors was responding to an "emergency call" as defined in R.C. 2744.01(A). An "emergency" is "an unforeseen combination of circumstances or the resulting state that calls for immediate action." Webster's Third New International Dictionary (1986) 741. The facts of this case do not suggest that something unexpectedly occurred or that immediate action was necessary. The officers saw money, and nothing else, change hands. Then they drove toward a street that paralleled their suspects' route without sirens and without radioing for backup. None of this suggests an emergency. Further, these facts indicate that the officers would not have had probable cause to stop the occupants of the suspects' car.

{¶ 20} The majority does not stress the definition of "emergency"; it stresses the definition of "duty." Although I agree with the majority that the list of items in R.C. 2744.01(A) is not exhaustive, I will not treat it as nonexistent. The General Assembly included the list for a reason; otherwise the definition would have ended after the word "duty." I believe that the General Assembly was attempting to distinguish emergency calls to duty from ordinary calls to duty. In doing so, the General Assembly implicitly differentiated ordinary personal observations of peace officers from "personal observations by peace officers of inherently dangerous situations that demand an immediate response." The majority's reading of R.C. 2744.01(A) renders this significant limitation meaningless.

{¶ 21} I do not believe the officers were on an "emergency call." Accordingly, I do not believe the city of Cleveland is entitled to immunity from liability even assuming the constitutionality of the statute. I dissent.

---

WISE, J., dissenting.

{¶ 22} I concur with the majority's conclusion that the phrase "including, but not limited to," contained in R.C. 2744.01(A) indicates a nonexhaustive list of examples of what "call to duty" includes in defining the term "emergency call." I further agree that the phrase "inherently dangerous situations" applies only to the personal observations of a peace officer.

{¶ 23} I respectfully disagree with the majority's conclusion that the examples provided in the statute have no application to this case. The fact that the list of

examples is nonexhaustive does not mean that the examples may be ignored. Examples are meant to be illustrative. They provide meaning and definition. The language "including, but not limited to," means just that. Because the examples are included in the definition of "emergency call," they must be considered when determining the issue of immunity for peace officers. This is in accordance with the general rule that "[i]n matters of construction, it is the duty of this court to give effect to the words used, not to delete words used or to insert words not used." *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 524 N.E.2d 441, paragraph three of the syllabus.

{¶ 24} However, when the facts of a given situation do not fit any of the examples provided in the statute, the courts are not prevented from further analyzing, outside of the examples contained in R.C. 2744.01(A), what is a "call to duty." In those circumstances, courts must look beyond the examples provided in the statute in order to determine whether a "call to duty" arose.

{¶ 25} In R.C. 2744.01(A), the General Assembly provides the example that a "call to duty" includes "personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer." The example of the peace officer's personal observations limits "call to duty" for purposes of immunity, and this limitation is not placed on "communications from citizens" or "police dispatches." If we are to give effect to the intentions of the General Assembly, we must include in our analysis the examples provided, including the limitations to those examples.

{¶ 26} Therefore, when the facts of a given situation are similar to an example provided in the statute, the analysis of the facts must be based upon that example. In the case sub judice, the facts of this case fit the example of a peace officer's personal observations so closely that it must be analyzed with it in mind. Here, the officers' challenged conduct was in response to their personal observations. Thus, the trial court, in its analysis, should have determined whether the observation of a suspected felony drug transaction was an observation of an inherently dangerous situation that created a call to duty requiring an immediate response and, if so, whether the complained-of conduct was in response to that call to duty.

{¶ 27} Accordingly, I dissent and would reverse and remand this matter to the trial court for further analysis as set forth above.

---

Peltz & Birne, Kenneth A. Birne, Kathleen A. Nitschke and Kristen L. Craig, for appellant.

Subodh Chandra, Director of Law, and Scott J. Davis, Assistant Director of Law, for appellee.

Byron & Byron Co., L.P.A., Barry M. Byron and Stephen L. Byron; and John Gotherman, urging affirmance for amicus curiae Ohio Municipal League.