JOURNAL ENTRY AND OPINION
{¶ 1} The plaintiff/appellant, Patrick M. Rutledge, challenges the decision of the trial court, which granted summary judgment in favor of the defendants/appellees, Officer Terrance O'Toole and the Parma Heights Police Department, with regard to his negligence claim arising from a motor vehicle accident. Rutledge argues that the trial court erred by dismissing his negligence claim on the basis of sovereign immunity. After reviewing the record and applicable law, we affirm the decision of the trial court.
 {¶ 2} On September 28, 2001, around 2:00 a.m., Officer Deily of the Parma Heights Police Department stopped a vehicle suspecting drunk driving. Patrick M. Rutledge was a passenger in the vehicle. Shortly after the stop, Officer Terrance O'Toole was called to the scene in order to provide backup for Officer Deily.
 {¶ 3} A sobriety test was performed on the driver of the vehicle. Officer Deily also ran Rutledge's name through the police computer, which revealed that the Brunswick Police Department had issued an arrest warrant for Rutledge. Parma Heights police immediately notified the Brunswick police that Rutledge was in custody. It was mutually agreed by both departments that the Brunswick police would meet a Parma Heights police officer in the city of Strongsville and take custody of Rutledge. Officer O'Toole was ordered by his superior, Sgt. Baron, to transport Rutledge to Strongsville. Ironically, Officer O'Toole and Rutledge are second cousins.
 {¶ 4} Rutledge was placed in the rear of O'Toole's police cruiser, and they proceeded south on Pearl Road. During the drive, O'Toole and Rutledge discussed their family through the cruiser's plexiglass center partition window. When approaching the intersection of Pearl and Smith Roads, Officer O'Toole noticed that the power was out in the area, and the traffic light was not functioning.
 {¶ 5} Officer O'Toole stated that he brought his police cruiser to a complete stop before entering the intersection. Upon entering the intersection, the police cruiser was struck by a vehicle crossing Pearl Road. The vehicle was driven by Brian Vassel, who was intoxicated. Both Officer O'Toole and Rutledge sustained injuries in the accident. It is undisputed that the police cruiser's lights and sirens were not on, nor was Officer O'Toole speeding or driving his vehicle in an erratic manner.
 {¶ 6} Rutledge stated that Officer O'Toole drove the police cruiser in a normal way; however, he claims that O'Toole did not bring the cruiser to a complete stop before entering the intersection, although he had previously stated in his deposition that he could not remember.
 {¶ 7} On September 24, 2003, Rutledge filed a complaint against Brian Vassel, Officer Terrance O'Toole, and the Parma Heights Police Department, alleging negligence arising from the motor vehicle accident. On December 2, 2003, Rutledge settled his claim against Brian Vassel, who was subsequently dismissed with prejudice from the suit. On March 16, 2004, Officer O'Toole and the city of Parma Heights filed a motion for summary judgment claiming they were immune from liability. On June 4, 2004, the trial court granted their motion holding that Officer O'Toole was carrying out orders by transporting Rutledge at the time of the accident, constituting immune conduct.
 {¶ 8} Rutledge ("appellant") filed the instant appeal, arguing two assignments of error for review. These assignments will be addressed together since they are interrelated.
 {¶ 9} "I. The trial court erred in granting summary judgment in favor of appellees by finding no genuine issue of material fact existed as to whether appellee o'toole was on an `emergency call' at the time of the accident with appellant and therefore protected from liability pursuant to Ohio R.C. 2744.02(B)(1)(a)."
 {¶ 10} "II. The trial court erred in granting summary judgment in favor of appellees by relying solely on affidavits of appellees without authentic independent evidence to corroborate their assertion that appellee o'toole was `ordered' to transport appellant in contravention of this court's ruling in Hudson v. East Cleveland (1994), Ohio App. Lexis 1040 (unreported, attached)."
 {¶ 11} In summation, the appellant argues that the trial court erred by considering the affidavits produced by Officer O'Toole and Sgt. Baron when granting their motion for summary judgment. The affidavits allege that Officer O'Toole was "ordered" by Sgt. Baron to transport the appellant to the Brunswick police. The appellant argues that this "order," even if given, did not amount to a "call to duty" that would constitute an "emergency" and trigger governmental immunity under R.C. 2744.01(A).
 {¶ 12} "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327,364 N.E.2d 267.
 {¶ 13} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317, 330,106 S.Ct. 2548, 91 L.Ed. 2d 265; Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115, 526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356,604 N.E.2d 138.
 {¶ 14} In Dresher v. Burt (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, 570 N.E.2d 1095. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record whichdemonstrate the absence of a genuine issue of fact or material element ofthe nonmoving party's claim." Id. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 15} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saundersv. McFaul (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24; Link v.Leadworks Corp. (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140.
 {¶ 16} Under R.C. 2744.02 (B)(1), a political subdivision may be held liable for injuries caused by an employee's negligent operation of a motor vehicle when the employee is engaged in the scope of his or her employment. However, a political subdivision will not be liable for damages caused by a police officer's negligent operation of a motor vehicle if the officer was responding to an emergency call at the time of the accident and his or her operation of the vehicle did not constitute willful or wanton misconduct. R.C. 2744.02(B)(1)(a); Colbert v. City ofCleveland, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781; Rahn v.Whitehall (1989), 62 Ohio App.3d 62, 65-66, 574 N.E.2d 567; Rodgersv. DeRue (1991), 75 Ohio App.3d 200, 202, 598 N.E.2d 1312.
 {¶ 17} The Ohio Revised Code defines an "emergency call as a call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer. R.C. 2744.01(A). In Colbert v. Cleveland, supra, the Ohio Supreme Court clarified and broadened this definition stating an "emergency call" is a call to duty that involves a situation to which a response by a peace officer is required by the officer's professional obligation; the situation need not be inherently dangerous to demand a response by the officer.
 {¶ 18} The Colbert court defined "duty" as "obligatory tasks, conduct, service, or functions enjoined by order or usage according to rank, occupation, or profession." Id. at 217, citing, Webster's Third New International Dictionary (1986) 705. The court further held that the remaining terms found in R.C. 2744.01(A), "including, but not limitedto, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer," constitute a nonexhaustive list of immune conduct. State v. Thompson,92 Ohio St.3d 584, 588, 2001-Ohio-1288, 752 N.E.2d 276, quoting State v.Lozano, 90 Ohio St.3d 560, 562, 2001-Ohio-224, 740 N.E.2d 273.
 {¶ 19} The issue of whether an officer is on an "emergency call" may be determined as a matter of law where triable questions of fact are not present. Hall-Pearson v. City of S. Euclid (Oct. 8, 1998), Cuyahoga App. No. 73429, citing Lewis v. Bland (1991), 75 Ohio App.3d 453, 457,599 N.E.2d 814.
 {¶ 20} In the instant matter, it is important to note that both parties concede that Officer O'Toole's actions while operating his police cruiser were at the most, merely negligent, and did not constitute willful or wanton misconduct.
 {¶ 21} It is undisputed that the appellant was taken into custody by the Parma Heights police because of an arrest warrant that had been issued by the Brunswick police. Sgt. Baron immediately arranged for the transfer of the appellant to the Brunswick police. Officer O'Toole was then ordered by Sgt. Baron to transport the appellant to a designated meeting place in Strongsville, where the Brunswick police would take custody of the appellant.
 {¶ 22} It is irrelevant whether O'Toole volunteered to transport the appellant because of his familial relationship or that he was ordered to do so by his superior. Transporting the appellant to the Brunswick police constituted an "emergency call" because it was a situation which required a response by Officer O'Toole and was required by his professional obligation. It was Officer O'Toole's duty to arrest the appellant and transport him to jail or to another police department if required; to do otherwise would amount to a dereliction of his duty.
 {¶ 23} The appellant claims that Colbert and other police immunity cases can be distinguished from the instant matter because those cases involved a police officer "responding" to an emergency situation, rather than being ordered by a superior officer to do something. The appellant argues that the immunity shield is warranted in those cases because police officers must be able to "respond" and react to certain situations without fear that their actions may result in potential liability. We disagree with the appellant's distinction and cannot find a difference between being "ordered" to do something and "responding" to a situation that could vary sovereign immunity protections.
 {¶ 24} Next, the appellant argues that the affidavits of Sgt. Baron and Officer O'Toole are insufficient by themselves to warrant the conclusion that O'Toole was "ordered" to transport the appellant, constituting an "emergency call." However, as we stated before, it was immaterial whether O'Toole had been ordered or had volunteered to transport the appellant. The record reveals that one of the police officers on the scene of the traffic stop would have had to transport the appellant to the Brunswick police; sovereign immunity would have attached to any one of them. Given the undisputed facts in this case, the trial court did not err in relying on the affidavits of Officer O'Toole and Sgt. Baron when deciding their motion for summary judgment.
 {¶ 25} We find that the transport of an arrestee to another jurisdiction constitutes an "emergency call," given the wording of R.C.2744.01(A) and the Ohio Supreme Court's definition in Colbert. Using the same reasoning applied by the Ohio Supreme Court in Colbert, which concluded that an "emergency call" need not be an "inherently dangerous" situation, we hold an immediate or exigent circumstance is not needed to constitute an "emergency call" in a transport situation. During a transport, an officer is responding to a call to duty, fulfilling his professional obligation.
 {¶ 26} Analyzing the evidence in the light most favorable to the appellant, we find the grant of summary judgment in favor of Officer O'Toole and the city of Parma Heights to be proper. The appellant's first and second assignments of error are overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J., and Cooney, J., concur.