JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} This appeal stems from a remand by the Supreme Court of Ohio. See Fogle v. Bentleyville, Slip Opinion 2007-Ohio-6454. The Supreme Court reversed Fogle v. Bentleyville, 8th Dist. No. 88375,2007-Ohio-2913, based on the authority of Hubbell v. Xenia,115 Ohio St.3d 77, 2007-Ohio-4839.
 {¶ 2} Defendants-appellants, Village of Bentleyville ("Village") and Officer Eric Enk, appealed from a judgment denying their motion for summary judgment, arguing they were entitled to sovereign immunity. We dismissed the appeal because we determined that it was not a final, appealable order. Fogle at _30.
 {¶ 3} In Hubbell, however, the Supreme Court held that "[w]hen a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." Id. at the syllabus.
 {¶ 4} Reversing Fogle in a one paragraph opinion, the Supreme Court stated:
 {¶ 5} "The judgment of the courts of appeals is reversed on the authority of [Hubbell], and the cause is remanded to the court of appeals with instructions for the court of appeals to conduct a de novo review of the law and facts. If, after that review, only questions of law remain, the court of appeals may resolve the appeal. If genuine issues of material fact remain, the court of appeals may remand the cause to the trial court for further development of the facts necessary to resolve the immunity issue."
 {¶ 6} Thus, this court must now determine whether the trial court erred when it denied appellants' summary judgment motion. *Page 4 
 {¶ 7} Plaintiffs-appellees, Officer Edward Fogle of the Solon Police Department and his wife, Arleen Fogle, sued appellants for injuries Officer Fogle sustained when his police cruiser was struck, while he was sitting in it, by Officer Enk of the Bentleyville Police Department. Officer Enk was on duty and driving his police cruiser when he hit Officer Fogle's vehicle, on May 17, 2003, at approximately 2:00 a.m.
 {¶ 8} Appellants filed a joint motion for summary judgment claiming they were entitled to sovereign immunity under Chapter 2744 of the Ohio Revised Code. Specifically, they argued that they were immune from liability because: 1.) Officer Enk was responding to an emergency call; 2.) Officer Enk's conduct was not "willful or wanton"; and 3.) Officer Enk's conduct was not reckless.
 {¶ 9} In their response, appellees maintained that appellants were not entitled to immunity because genuine issues of material fact remain as to all three issues.
 {¶ 10} According to Officer Fogle, he had responded to a call regarding an unoccupied vehicle that was stopped in the middle of the slow lane on Route 422. This particular stretch of highway had been designated a construction zone, with a posted speed limit of 50 m.p.h. Officer Fogle stated that he pulled behind the unoccupied vehicle, and engaged his overhead strobe lights, rear strobe lights, and rear and front emergency flash lights. He was sitting in his cruiser when he was struck from behind by Officer Enk.
 {¶ 11} Officer Enk testified at his deposition that when the accident occurred, he was en route to pick up an inmate from the Euclid Police Department. He had been told to do so by his supervisor. He said that he had never been on this stretch of Route 422, and so he was *Page 5 
not familiar with it. He also did not know that this stretch of highway was a construction zone, or that the speed limit was fifty m.p.h. Officer Enk said that he was driving at a safe speed, between fifty and fifty-five m.p.h.
 {¶ 12} Although Officer Enk did not know the area was a construction zone, he stated, "I know that there [were] construction lights, very, very bright construction lights in the eastbound lanes that were very blinding at that time in the area of where the crash took place." He explained he was traveling in the westbound lanes, but said, "the lights were facing in the direction of actually in my view. * * * I was going north when I was coming — when I was driving they were coming right at me." He could not say, however, how long the lights were in his eyes before impact. When asked if the lights affected his ability to see, he responded, "[t]hey were blinding." He further agreed that his view was obstructed from the time he entered the area where the lights were, until the point of impact.
 {¶ 13} Officer Enk stated that he worked two jobs at the time of the accident, part time at the Bentleyville Police Department and full time at Fox International, an electronics company. He had worked eight hours at Fox that Friday, before the accident occurred (around 2:00 a.m. on Saturday). In fact, he said that he had worked eight hours at Fox every day that week, Monday through Friday.
 {¶ 14} Officer Enk testified that he was scheduled to work his shift at Bentleyville from 8:00 p.m. to 4:00 a.m. that Friday. He could not remember what he did between jobs. He agreed that he got up that Friday morning around 6:45 a.m. So at the time of the accident, he agreed that he had been awake approximately nineteen hours. *Page 6 
 {¶ 15} Officer Enk also stated that Officer Fogle's emergency strobe lights were not on, but he could not remember if Officer Fogle's rear deck lights were on. Officer Enk did not have his strobe lights or siren on. And he agreed that there was no reason for him to be traveling over the speed limit.
 {¶ 16} According to Bentleyville Police Chief, Timothy Pitts, all three cars, Officer Fogle's cruiser, Officer Enk's cruiser, and the unoccupied vehicle, were totaled in the accident. Pitts also gave Officer Enk a written reprimand for causing the accident and placed him on probation for an unspecified amount of time.
 {¶ 17} An accident investigator, Jim Spieth of the Valley View Police Department, reconstructed the accident for the Solon Police Department. Spieth submitted a written report, which appellees attached to their brief in opposition to appellants' motion for summary judgment, concluding that Officer Enk was traveling at a speed of "no less than 66 m.p.h. at impact."
 {¶ 18} Appellees hired Introtech, a company that provided "crash reconstruction services." Choya Hawn and Henry Lipian submitted a written report, also attached to appellees' opposition brief, concluding that Officer Enk was traveling at a minimum speed of 66 m.p.h. They further reported that because Officer Enk had been awake for over eighteen hours, he had "an impairment equal to that of a person with a blood alcohol content of .05%. They concluded that he was "fatigued and experiencing the effects of acute sleep dept." *Page 7 
 {¶ 19} The trial court denied appellants' summary judgment motion without opinion. Appellants filed notice of an interlocutory appeal pursuant to R.C. 2744.02(C), and raised a sole assignment of error:
 {¶ 20} "The trial court committed reversal error when it denied appellants' motion for summary judgment based on immunity."
 SUMMARY JUDGMENT STANDARD {¶ 21} We review an appeal from summary judgment under a de novo standard. Baiko v. Mays (2000), 140 Ohio App.3d 1, 10. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.Northeast Ohio Apartment Assn. v. Cuyahoga Cty. Bd. of Commrs. (1997),121 Ohio App.3d 188, 192.
 {¶ 22} Civ. R. 56(C) provides that before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." State ex rel. Duganitz v. Ohio AdultParole Auth. (1996), 77 Ohio St.3d 190, 191.
 {¶ 23} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293. If the movant fails to meet this burden, summary judgment is not *Page 8 
appropriate, but if the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. Id. at 293.
 POLITICAL-SUBDIVISION IMMUNITY: THE FRAMEWORK {¶ 24} The common-law concept of sovereign immunity has been codified in R.C. Chapter 2744. See Wilson v. Stark Cty. Dept. of HumanServs. (1994), 70 Ohio St.3d 450, 453.
 {¶ 25} In the majority of cases, the broad immunity of Chapter 2744 provides a complete defense to a negligence cause of action. Turner v.Central Local School Dist. (1999), 85 Ohio St.3d 95, 98. However, "[t]he immunity afforded a political subdivision in R.C. 2744.02(A)(1) is not absolute[.]" Cater v. Cleveland (1998), 83 Ohio St.3d 24, 28, citingHill v. Urbana (1997), 79 Ohio St.3d 130.
 {¶ 26} In Colbert v. Cleveland, 99 Ohio St.3d 215, 2003-Ohio-3319, _7-9, the Supreme Court set forth the framework:
 {¶ 27} "Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a three-tiered analysis. Greene Cty. Agricultural Soc. v. Liming (2000),89 Ohio St.3d 551, 556-557. The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. Id. at 556-557; R.C. 2744.02(A)(1). * * *
 {¶ 28} "The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political *Page 9 
subdivision to liability. [Cater, supra,] at 28. At this tier, the court may also need to determine whether specific defenses to liability for negligent operation of a motor vehicle listed in R.C. 2744.02(B)(1)(a) through (c) apply.
 {¶ 29} "If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability." (Parallel citations omitted.)
 LIABILITY OF VILLAGE OF BENTLEYVILLE {¶ 30} In this case, there is no dispute that the Village is a political subdivision providing "governmental functions," and therefore is entitled to blanket immunity under the first tier of the analysis.
 {¶ 31} As for the second tier, political subdivisions are generally liable for death or injury caused by the negligent operation of a motor vehicle by one of its employees acting within the scope of employment. R.C. 2744.02(B)(1). The political subdivision, however, is immune from liability if it has a "full defense to that liability." Id.
 {¶ 32} At issue in this case, is whether the Village is entitled to the defense set forth in R.C. 2744.02(B)(1)(a), which provides, "[a] member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton conduct." *Page 10 
 {¶ 33} We must first determine if Officer Enk was responding to an emergency call. If it was not an emergency call, then the Village is not entitled to the defense under R.C. 2744.02(B)(1)(a) and it would not be immune from liability. If Officer Enk was responding to an emergency call, the Village is entitled to immunity if he did not operate the vehicle with willful or wanton misconduct.
A. Emergency Call {¶ 34} R.C. 2744.01(A) defines "emergency call" as "a call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer."
 {¶ 35} In Colbert, supra, the Supreme Court defined "duty" to mean "obligatory tasks, conduct, service, or functions enjoined by order or usage according to rank, occupation, or profession." Id. at _13, citing Webster's Third New International Dictionary (1986) 705. Thus, the court did not limit calls to duty to "inherently dangerous" situations. Id. at _13-14. Instead, it adopted a broad interpretation of "call to duty" and stated that it included situations "to which a response by a peace officer is required by the officer's professional obligation." Id.
 {¶ 36} The issue of whether an officer is on an "emergency call" may be determined as a matter of law where triable questions of fact are not present.
 {¶ 37} Howe v. Henry Cty. Commrs., 167 Ohio App.3d 865,2006-Ohio-3893, at _13, citing Lewis v. Bland (1991),75 Ohio App.3d 453, 457. *Page 11 
 {¶ 38} Appellants argue that this case has "very similar facts" to a recent decision by this court, Rutledge v. O'Toole, 8th Dist. No. 84843,2005-Ohio-1010. We agree.
 {¶ 39} In Rutledge, a police officer was told by his supervisor to transport an arrestee to another jurisdiction. During transport, the officer pulled into an intersection and his police cruiser was struck by a drunk driver. The arrestee was injured in the accident and brought suit against the drunk driver, the officer, and the city. This court held that the city was immune from liability, reasoning:
 {¶ 40} "We find that the transport of an arrestee to another jurisdiction constitutes an `emergency call,' given the wording of R.C. 2744.01(A) and the Ohio Supreme Court's definition in Colbert. Using the same reasoning applied by the Ohio Supreme Court in Colbert, which concluded that an `emergency call' need not be an `inherently dangerous' situation, we hold an immediate or exigent circumstance is not needed to constitute an `emergency call' in a transport situation. During a transport, an officer is responding to a call to duty, fulfilling his professional obligation." Id. at _25.
 {¶ 41} Appellees maintain that Rutledge is distinguishable because Officer Enk did not have custody of the inmate. Under appellees' argument, the Village would have been entitled to immunity if Officer Enk had already picked up the inmate and then struck Officer Fogle's vehicle, but not before. We disagree.
 {¶ 42} Although Officer Enk was en route to pick up an arrestee, and was not yet transporting him, it is a distinction without a difference. Officer Enk was doing what he had been told to do by his supervising officer. As in Rutledge, he was fulfilling his professional *Page 12 
obligation.[1] Therefore, we conclude as a matter of law that Officer Enk was responding to an "emergency call."
 {¶ 43} However, this court must still examine the second requirement under R.C. 2744.02(B)(1)(a), namely whether Officer Enk's conduct was willful or wanton, to determine if the "emergency call" defense attaches to afford the Village immunity.
B. Willful or Wanton Misconduct {¶ 44} For purposes of immunity afforded under Chapter 2744, "`wanton or reckless misconduct' under R.C. 2744.03(A)(6) [see next section, Officer Enk's individual liability] may be viewed as the functional equivalent of `willful or wanton misconduct' under R.C. 2744.02(B)(1)(b)." Whitfield v. Dayton, 167 Ohio App.3d 172,2006-Ohio-2917, at _34.
 {¶ 45} In Whitfield, the Second District Court of Appeals thoroughly reviewed the terms willful, wanton, and reckless conduct "`as points on a continuum between negligence, which conveys the idea of inadvertence, and intentional misconduct.'" Id. at _28, quoting Brockman v. Bell
(1992), 78 Ohio App.3d 508, 515.
 {¶ 46} It explained that "`wanton misconduct' has been defined as `the failure to exercise any care toward one to whom a duty of care is owed when the failure occurs under *Page 13 
circumstances for which the probability of harm is great and when the probability of harm is known to the tortfeasor.' Id.
 {¶ 47} "In contrast, `willful misconduct' involves a more positive mental state prompting the injurious act than wanton misconduct, but the intention relates to the misconduct, not the result. Id. Consequently, `willful misconduct' is defined as: `an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing some wrongful acts with knowledge or appreciation of the likelihood of resulting injury.' Id.
 {¶ 48} "In analyzing the place of `reckless misconduct' on the continuum, * * * the Ohio Supreme Court * * * adopted the definition of reckless misconduct set forth in 2 Restatement of the Law2d Torts (1965) 587, Section 500, which states that an actor's conduct: `is in reckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.' Id. at 516 (citations omitted)."
 {¶ 49} Applying the standard to the facts in the case at bar, we conclude that there are genuine issues of material fact as to whether Officer Enk's driving constituted willful, wanton, or reckless misconduct.
 {¶ 50} Officer Enk testified that he was not familiar with that stretch of Route 422. Although he did not know it was a construction zone, he saw construction taking place and *Page 14 
said there were "very, very bright construction lights" that were "blinding" him and obstructing his view. Although Officer Enk stated that he was traveling at a safe speed, two separate accident reconstruction reports indicated that Officer Enk was traveling at least 16 m.p.h. over the posted speed limit — at impact — in a construction zone. In addition, one of the reports also indicated that Officer Enk was fatigued.
 {¶ 51} After reviewing the "evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff," we conclude that a reasonable jury could find that Officer Enk's conduct was willful, wanton, or reckless. See Jackson v. Columbus,117 Ohio St.3d 328, 2008-Ohio-1041, at _11 (reiterating what a court is required to do when analyzing a summary judgment motion). Genuine issues of material fact remain as to what speed Officer Enk was traveling, and whether his speed, and being blinded by very bright construction lights, on a highway with which he was unfamiliar, could be considered as failing to exercise any care, knowing that the probability of harm is great.
 {¶ 52} Appellants argue that Officer Enk hit his breaks, so he at least showed "some" care. We disagree. As the Second District explained:
 {¶ 53} "`[one] could drive an emergency vehicle in any manner that [one] pleased and not be guilty of wanton or reckless misconduct simply because [one] activated [one's] siren and lights. Even looking where [one is] going and applying one's brakes meets the literalistic, but not legal definition of "any care." If "any care" is construed in that manner, the exception becomes virtually meaningless.'"Whitfield at _37, quoting the Hunter v. Columbus (2000),139 Ohio App.3d 962, 970. *Page 15 
 {¶ 54} Thus, since genuine issues of material fact exist as to whether Officer Enk's conduct was willful, wanton, or reckless, we conclude that the trial court did not err when it denied summary judgment to the Village.
 OFFICER ENK'S INDIVIDUAL LIABILITY {¶ 55} Under R.C. 2744.03(A)(6)(b), an employee of a political subdivision is immune from individual liability unless "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]"
 {¶ 56} Since wanton or reckless misconduct under R.C. 2744.03(A)(6) may be viewed as the functional equivalent of willful or wanton misconduct under R.C. 2744.02(B)(1)(b) (see previous section, Village's liability), the same analysis applies here.
 {¶ 57} Based on the facts and circumstances presented, in a light most favorable to appellees, we conclude that genuine issues of material fact remain as to whether Officer Enk's conduct was willful, wanton, or reckless. Thus, the trial court did not err when it denied summary judgment with respect to Officer Enk's individual liability.
 {¶ 58} Accordingly, appellants' sole assignment of error is overruled. The judgment of the Cuyahoga County Court of Common Pleas is affirmed. Case remanded to the trial court for further proceedings consistent with this opinion.
It is ordered that appellees recover from appellants costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. *Page 16 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure
MELODY J. STEWART, J., CONCURS IN JUDGMENT ONLY WITH SEPARATE OPINION; ANTHONY O. CALABRESE, JR., P.J., DISSENTS WITH SEPARATE OPINION
[1] Appellees argue that this case is more similar to Hubbard v.Shaffer, 8th Dist. No. 89870, 2008-Ohio-1940, where this court held there was a question of fact as to whether the officer was responding to an emergency call. But in Hubbard, we determined that there was a question of fact because the officer "made a unilateral decision" to go to the location of another officer. Id. at _26.