JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Plaintiff-appellant, Anne Natale, appeals from a summary judgment rendered on behalf of defendants-appellees, city of Rocky River and police officer Tracey Hill, on her complaint that Hill negligently operated his police car when colliding with her car. The court held that the city was immune from liability as a matter of law because Natale did not establish a triable issue of fact as to whether the officer driving the police car acted in a willful or wanton manner. We find no error and affirm.
 I {¶ 2} Pursuant to Civ. R. 56(C), we view the contested facts in a light most favorable to Natale, the non-moving party.
 {¶ 3} The city's police department received a 10:30 p.m. call reporting a case of domestic violence in which a couple were "beating each other throwing each other around." Consistent with department policy relating to domestic violence complaints, two police cars were dispatched to the scene. The first police car, driven by Officer George Lichman, was proceeding on Lake Road, a four-lane road with two lanes of traffic running in each direction. The speed limit on Lake Road is 35 miles per hour. Natale was driving in the left-hand, westbound lane when she saw a police car just five feet behind her car, with its emergency lights activated. She wanted to pull over to the right lane, but there was an SUV in the right lane, "a few car lengths away," and she did not believe it would be safe for her to change lanes. So instead of pulling over, she stopped *Page 4 
her car in the left lane, forcing Lichman to stop behind her. Moments later, the second police car, driven by Officer Tracey Hill, struck her car.
 {¶ 4} Lichman, testified at deposition that he activated his siren and emergency lights when he responded to the domestic violence dispatch. As he proceeded on Lake Road, he saw the SUV stopped in the curb lane and passed it. Lichman then saw Natale's car stopped in the left lane "[s]everal hundred, maybe about three hundred feet or more" ahead of the SUV. He slowed behind Natale's car with his siren, emergency lights and air horn sounding, waiting for her to pull to the right lane so he could pass. She did not move and he came to a complete stop behind her. Just seconds later, Hill's car "sideswiped" him. Lichman did not recall why he did not go left around Natale, but said he knew that there was a least one oncoming car going eastbound, although he could not recall how far away it was at the time of the collision.
 {¶ 5} Hill testified at deposition that he made a left-hand turn onto the westbound lanes of Lake Road and noticed traffic coming eastbound. He had his emergency lights activated. Moving at about 40 miles per hour, he saw Lichman's car about 500 feet ahead. He also saw the stopped SUV in the right lane, much nearer to him than Lichman. As Hill approached the SUV, he noticed it starting to pull away from the curb, so he activated his air horn. Hill moved "a couple feet" left of center in case the SUV moved into the left lane. As he passed the SUV, oncoming traffic from the eastbound lane forced him to move *Page 5 
back into the left-hand, westbound lane. At that point, Hill saw Lichman's stopped police car. He swerved right to the curb lane and struck the curb, losing control of his car. He grazed Lichman's car but struck the rear of Natale's car, causing it to slide about 100 feet into a tree. No traffic citations were issued against either Natale or the driver of the SUV.
 {¶ 6} Natale brought this action against the city and Hill, [1]
alleging that Hill negligently operated his police car when striking her car. In response to the city's assertion of sovereign immunity, Natale asserted that immunity did not attach because Hill acted willfully and wantonly by failing to use his siren and by traveling at what her expert judged to be a speed in excess of 79 miles per hour in a 35 miles per hour speed zone. The court granted the city's motion for summary judgment, finding that Natale failed to rebut Hill's testimony that he used his car's air horn in lieu of the siren. The court also criticized the methodology employed by Natale's expert, but held that even if Hill traveled at the speed claimed by the expert, Hill's actions in responding to an emergency call were lawful and did not rise to the level of willful, wanton or reckless misconduct.
 II *Page 6 {¶ 7} We address questions of sovereign immunity as a matter of law,Conley v. Shearer (1992), 64 Ohio St.3d 284, 292, so they are particularly apt for resolution by way of summary judgment pursuant to Civ. R. 56. An extended analysis of the law relating to sovereign immunity under R.C. Chapter 2744 is unnecessary because the parties agree that Hill was responding to an emergency call, therefore establishing prima facie immunity. They agree that the city is liable for Hill's negligent conduct only if Natale can show Hill's operation of his police car constituted "willful or wanton misconduct[.]" See R.C. 2744.02(B)(1)(a); Colbert v. Cleveland, 99 Ohio St.3d 215,2003-Ohio-3319, syllabus. The parties likewise agree that Hill can be personally liable to Natale only if his operation of his police car was done with "malicious purpose, in bad faith, or in a wanton or reckless manner[.]" See R.C. 2744.03(A)(6)(b).
 {¶ 8} "Wanton misconduct" has been defined as "the failure to exercise any care toward one to whom a duty of care is owed when the failure occurs under circumstances for which the probability of harm is great and when the probability of harm is known to the tortfeasor."Brockman v. Bell (1992), 78 Ohio App.3d 508, 515. The term "willful misconduct" has been defined as "the intent, purpose, or design to injure." Gladon v. Greater Cleveland Regional Transit Auth. (1996),75 Ohio St.3d 312, 319, 1996-Ohio-137. These are standards that go beyond mere negligence and require "the evidence [to establish] a disposition to perversity on the part of the tortfeasor" such that "the *Page 7 
actor must be conscious that his conduct will in all probability result in injury." Fabrey v. McDonald Village Dept, 70 Ohio St.3d 351,356, 1994-Ohio-368. The "wanton or reckless misconduct" standard set forth in R.C. 2744.03(A)(6) and "willful or wanton misconduct" standard set forth in R.C. 2744.02(B)(1)(a) are functionally equivalent.Whitfield v. City of Dayton, 167 Ohio App.3d 172, 2006-Ohio-2917, ¶ 34.
 {¶ 9} In her opposition to the city's motion for summary judgment, Natale made two arguments to show that Hill acted in a willful and wanton manner: (1) that he failed to use his siren and (2) that he was traveling at an excessively high rate of speed at the time of the collision.[2]
 A {¶ 10} Natale first argues that Hill acted in a willful, wanton and reckless manner by failing to use his siren. Both she and the driver of the SUV testified at deposition that they did not hear any sirens. She maintains that without the use of his siren, Hill violated R.C. 4511.24, which exempts public safety vehicles from the speed laws only if the vehicle is "equipped with and displaying at least *Page 8 
one flashing, rotating or oscillating light" and the driver of the vehicle makes an audible signal by "bell, siren, or exhaust whistle * * *."
 {¶ 11} Compliance with R.C. 4511.24 is not a prerequisite for immunity. Edinger v. Bd. of Allen Cty. Commrs. (Apr. 26, 1995), Allen App. No. 1-94-84. In any event, Hill testified at deposition and said that instead of using his siren, he used his air horn. Lichman testified that he also heard Hill's air horn. Natale said that she did not hear an air horn, but conceded that her failure to hear it did not mean that it had not sounded. The evidence showed that Natale's car windows were closed and that she was listening to the radio. Her inattention to outside sounds was further demonstrated by her testimony that she did not become aware of Lichman's presence behind her until he was just "five feet" off her rear bumper. Lichman testified that when he came to a complete stop behind Natale, he not only had his emergency lights and siren activated, but that he sounded his air horn several times as he waited for her to move out of his way. Natale stated that she did not hear Lichman's siren either, although there were other witnesses who did hear it. If Natale had been oblivious to Lichman's presence, with his car's emergency lights, siren and air horn activated, until he was just a few feet off her rear bumper, her statement that she did not hear Hill's air horn can only be taken as proof that she did not hear Hill — not that he failed to use his air horn. See Williamson v.Bechtel, Cuyahoga App. No. 82463, 2003-Ohio-5385, ¶ 31. *Page 9 
 {¶ 12} Even if we assume for purposes of summary judgment that Hill did not activate either his siren or his air horn, Natale has offered no evidence to show that this omission went beyond mere negligence and rose to the level of willful, wanton, or reckless conduct. The undisputed evidence shows that the accident occurred at 10:30 p.m., on a dry road in a residential area with minimal traffic. These conditions were so benign that Hill's failure to activate his siren did not show a "disposition to perversity" on his part such that he was "conscious that his conduct [would] in all probability result in injury."Fabrey, 70 Ohio St.3d at 356. At best, Natale has offered an issue of material fact on mere negligence, not willful, wanton, or reckless misconduct.
 {¶ 13} Moreover, we harbor significant doubts as to whether a failure on Hill's part to activate his siren proximately caused the accident in a way that would remove the city's immunity. If, as Natale alleged in her complaint, Hill's "operation" of the police car proximately caused the accident, we fail to see how his failure to activate the siren has any bearing on how he "operated" the car. No facts support the proposition that this accident happened because of Hill's alleged failure to activate the siren, but because of his alleged failure to control the police vehicle given his rate of speed. There is simply no causation between Hill's failure to use his siren and his inability to control his car.
 {¶ 14} Finally, there is no evidence to show that Hill's use of a siren would have alerted Natale and caused her to take action to prevent a collision. Natale *Page 10 
testified at deposition that she stopped in the left lane because she saw Lichman's police car just five feet from her rear bumper and the SUV blocking her path to the right lane. She was at a complete stop with Lichman's car directly between her and Hill's oncoming car for only "seconds" before being struck by Hill's car. Even had Hill's siren been activated, Natale had no other options for yielding to Hill's oncoming car and no time to react to a siren.
 {¶ 15} Under the facts presented in this case, we conclude as a matter of law that Hill's failure to activate his siren or air horn did not rise to the level of willful or wanton misconduct sufficient to overcome the city's assertion of sovereign immunity.[3]
 B {¶ 16} Natale next argues that Hill's excessive speed under the circumstances showed that he acted in a willful and wanton manner. Citing to her expert's conclusion that Hill drove in excess of 70 miles per hour, she maintains that this speed prevented Hill from stopping in time and thus constituted reckless conduct.
 {¶ 17} Both parties cite to cases that support their respective positions on whether an emergency responder's speeding constitutes willful or wanton misconduct. For example, Natale cites to Anderson v.Lynn (May 10, 1999), *Page 11 
Clermont App. No. CA98-097, in which the court of appeals found an issue of material fact on the question of willful and wanton misconduct when a police officer, traveling 72 miles per hour as he approached a sharp curve with a speed limit of 15 miles per hour, lost control of his vehicle when he skidded on ice. In Hawk v. Ketterer, Allen App. No. 1-03-53, 2003-Ohio-6389, the court of appeals reversed a summary judgment on sovereign immunity grounds by finding an issue of material fact existed on the issue of recklessness when a public safety vehicle, without emergency lights and siren activated, attempted to pass in a no passing zone. However, in Ybarra v. Vidra, Wood App. No. WD-04-061,2005-Ohio-2497, the court of appeals held that no evidence supported a finding that a police officer who sped through an intersection engaged in willful or wanton misconduct because road conditions and visibility were good and other drivers had seen the officer's approach. Likewise, in Sparks v. City of Cleveland, Cuyahoga App. No. 81715, 2003-Ohio-1172, we held that no issue of material fact existed as to whether a police officer showed willful or wanton misconduct when, while pursuing a suspect with emergency lights on but no siren, he executed a U-turn in an intersection.
 {¶ 18} Despite the differences in facts among these cases, the legal issues underpinning them remain the same — by exceeding the posted speed limit, did the emergency responder's action show a disposition to perversity such that the responder was conscious that the speeding would in all probability result in *Page 12 
injury? Although these cases are fact-specific, we are guided by the Tenth District Court of Appeals' statement in Byrd v. Kirby, Franklin App. No. 04AP-451, 2005-Ohio-1261, ¶ 28:
 {¶ 19} "Police runs in response to emergencies inevitably entail some degree of risk both to the responding officer and affected traffic. Nonetheless, Ohio law provides that vehicles on such emergency runs may, with lights activated and with due regard for the safety of others, exceed the posted speed limit (R.C. 4511.24) and proceed through red lights or stop signals (R.C. 4511.03). Because the law and current police and emergency practice clearly contemplates the necessity in some circumstances of such emergency runs, a responding officer does not create an "unreasonable" risk of harm by engaging in an emergency run merely because such a response creates a greater risk than would be incurred by traveling at normal speed and in compliance with opposing traffic signals. The question of unreasonable risks must be weighed in terms of what is acceptable in the context of an emergency run, not ordinary driving conditions * * *."
 {¶ 20} Viewing the facts most favorably to Natale, we assume consistently with Natale's expert report that Hill was traveling at least 70 miles per hour when he first saw Natale's and Lichman's stopped cars, and 55 miles per hour when he struck Natale's car. He was on a lighted, four-lane road that ran through a quiet residential area, at 10:30 p.m., in very light traffic. As he *Page 13 
proceeded in the left lane, he saw the SUV yielding to him in the right lane and Lichman's car proceeding in front of him. As Hill came upon the SUV, he believed it to be moving away from the curb, so he moved slightly left of center in order to avoid a possible collision. At that point, Hill saw an oncoming car and moved back into the left lane, only to discover that Lichman's car had stopped. Hill swerved into the right lane in hopes of going around Lichman, but struck the curb, causing him to lose control and strike both Lichman and Natale.
 {¶ 21} The conditions were not so extreme nor were circumstances so perilous as to support a finding that Hill's rate of speed rose to the level of willful or wanton misconduct. While Hill might be said to have negligently failed to exercise due care while responding to an emergency call, his failure to use a slower speed in anticipation of the circumstances presented by Natale's stopped vehicle in the middle of the road did not rise to the level of recklessness.
 {¶ 22} We therefore find that Natale failed to offer any evidence to establish a material issue of fact on whether Hill engaged in willful or wanton misconduct. The city and Hill were entitled to immunity as a matter of law and the court did not err by granting summary judgment.
 Judgment affirmed. *Page 14 
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, P.J., and PATRICIA ANN BLACKMON, J., CONCUR.
[1] Natale also named the driver of the SUV as a defendant, but dismissed him with prejudice after the court granted summary judgment to the city.
[2] Throughout this case, Natale has made many references to "an intentional cover-up" on the city's part, claiming that the city willfully destroyed evidence relating to the accident and otherwise failed to conduct an adequate investigation into the cause of the accident. These references about the city's post-accident conduct are irrelevant to the question of whether Hill's actions at the time of the accident were willful and wanton. Natale makes no claim against the city for spoliation of evidence, so we disregard any argument about the city's post-accident conduct.
[3] We are aware of the city's argument that Natale's testimony that she did not hear a siren was not the same as proving that Hill did not use his siren or air horn. Given the preceding discussion, we need not reach this argument. *Page 1