[Cite as *Seege v. Smith*, 2014-Ohio-5450.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

DONNA SEEGE

      Plaintiff-Appellant

v.

CHRISTOPHER B. SMITH, et al.

      Defendants-Appellees


Appellate Case No.    26210

Trial Court Case No.   2012-CV-6782


(Civil Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of December, 2014.

. . . . . . . . . . .


DWIGHT BRANNON, Atty. Reg. No. 0021657, DOUGLAS D. BRANNON, Atty. Reg. No. 0076603, MATTHEW C. SCHULTZ, Atty. Reg. No. 0080142, 130 West Second Street, Suite 900, Dayton, Ohio 45402
      Attorneys for Plaintiff-Appellant-Donna Seege

NEIL F. FREUND, Atty. Reg No. 0012183, LEONARD J. BAZELAK, Atty. Reg. No. 0064023, 1 South Main Street, Suite 1800, Dayton, Ohio 45402, JOHN J. DANISH, Atty. Reg. No. 0046639, JOHN C. MUSTO, Atty. Reg. No. 0071512, 101 West Third Street, P.O. Box 22, Dayton, Ohio 45401
      Attorneys for Defendant-Appellee-Christopher B. Smith

Attorneys for Defendant Appellee-City of Dayton

TODD SMITH, Atty. Reg. No. 0076794, 6047 Frantz Road, Suite 203, Dublin, Ohio 43017
      Attorney for Defendants-Appellees-AARP and United Healthcare Services, Inc.

MARGARET SCHUTTE, Atty. Reg. No. 0078968, 200 West Second Street, Suite 200, Dayton, Ohio 45402
      Attorney for Defendant-Appellee-U.S. Department of Health and Human Services

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    In this case, Plaintiff-Appellant, Donna Seege, appeals from a summary judgment rendered in favor of Defendants-Appellees, Christopher Smith and the City of Dayton, on grounds of their statutory immunity under R.C. Chap. 2744. Seege contends that Appellees were not entitled to statutory immunity for an auto accident involving Smith and Seege. According to Seege, Smith was not on an emergency call at the time of the accident, and Smith was also acting in a wanton and reckless manner when his police cruiser collided with Seege's wheelchair.

{¶ 2}    We conclude that the trial court did not err in rendering summary judgment on behalf of Appellees. The undisputed facts, construed most strongly in Appellant's favor, indicate that Smith was on an emergency call (statutorily defined as a call to duty) and did not act in a wanton or reckless manner when his cruiser struck Seege's wheelchair. Accordingly, the judgment of the trial court will be affirmed.

I.  Facts and Course of Proceedings

{¶ 3}    On April 12, 2011, Donna Seege left her apartment on Third Street in Dayton,

Ohio, to go to a nearby General Dollar store.   Seege had multiple sclerosis, and used a motorized wheelchair to travel to the store.   Seege left from the back entrance of her building, went down an alley, and went across a church parking lot to West Second Street, where there was an unmarked crosswalk.   After looking both ways, Seege began to travel across the intersection of James H. McGee Boulevard and West Second Street.   Once she arrived at the other side of James H. McGee Boulevard, she intended to travel one block south to West Third Street, where the store was located.

{¶ 4}     Around the same time, Dayton Police Officer, Christopher Smith, was on patrol in the area, driving a 2004 Ford Crown Victoria cruiser.   Smith frequently patrolled in the area of West Second Street and James H. McGee Boulevard, and was aware there was an unmarked crosswalk at the intersection.   Shortly before the accident, Smith received a dispatch telling him to respond to a traffic crash at North James H. McGee Boulevard and Bridge Street. Smith described this as a non-emergency call, because another officer was already at the scene.   In addition, there were no injuries.   Smith did not activate his lights and sirens, which he would use in an emergency situation.   Smith also indicated that in non-emergency situations, police officers must follow the same traffic rules and laws as ordinary citizens.

{¶ 5}     When Smith received the dispatch, he was near Stewart Street.   He traveled to Interstate 75, went northbound, and took the westbound exit to South James H. McGee Boulevard.   Smith then traveled northbound on James H. McGee Boulevard.   The speed limit was 40 miles per hour.   Smith encountered a green light at the intersection of James H. McGee Boulevard and West Third Street, which was a block south of the intersection where Seege was attempting to cross.   Traffic was moderate to heavy, and there were no cars ahead of Smith as he

proceeded through the intersection.   At that point, James H. McGee Boulevard consisted of two lanes in each direction, with a turn lane, and Smith was in the left northbound lane.   Smith stated that he was looking straight ahead and did not see any traffic ahead, either vehicular or pedestrian.

{¶ 6}   The black box in the cruiser indicated that Smith's speed was 45 or 46 miles per hour at 11 seconds before the collision, and about 41.5 miles at the time the brakes were applied.  As Smith got close to the intersection of Second and James H. McGee, he glanced to the left at the All in One parking lot, which was located on the northwest side of the intersection.   Smith stated that he does this habitually when he passes stores, to look for any type of drug activity, fights, robberies, or disturbances.   Smith's initial accounts to the police indicated that he looked to his left for four to five seconds.   However, at his deposition, Smith stated that he believed he had looked to the left only for one to three seconds.

{¶ 7}   Once Smith arrived at the intersection, he saw, in his peripheral vision, a motorized wheelchair moving from the east to his west.   He slammed on his brakes, but still struck the wheelchair with the left front bumper of his cruiser.   Smith's airbag deployed as a result of the collision.   The wheelchair was in the unmarked crosswalk when it was struck, and the point of impact was on the south side of the intersection, in the left-hand lane.   Seege was thrown off the wheelchair and landed to the left of the cruiser. The wheelchair ended up going to the left, toward the center divider and the empty southbound lane of travel.

{¶ 8}   Seege was taken to the hospital, where she remained for a month, with significant injuries.   In September 2012, Seege filed suit against Smith and the City of Dayton, alleging that Smith had negligently, willfully, wantonly, and recklessly failed to yield the right of

way as required by R.C. 4511.46(A). After both sides filed motions for summary judgment, the trial court granted Appellees' motion and denied Seege's motion. The court held that statutory immunity applied because Smith was on a call to duty, and his conduct was neither willful nor wanton. The court also found that Smith was entitled to individual immunity under R.C. 2744.03(A) because there was no evidence that he was acting recklessly. Seege appeals from the judgment rendered in favor of Appellees.

## II. Did the Trial Court Err in Rendering Summary Judgment in Appellees' Favor?

{¶ 9}    Seege's sole assignment of error states that:

The Trial Court Erred in Granting Summary Judgment to Defendants-Appellees Officer Christopher Smith and the City of Dayton.

{¶ 10}    Under this assignment of error, Seege first contends that Officer Smith was not responding to an emergency call for purposes of statutory immunity, and that the trial court interpreted the term "emergency call" too expansively.

{¶ 11}    It is well-established that "[a] trial court may grant a moving party summary judgment pursuant to Civ. R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." (Citation omitted.) *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist.1999). "We review decisions granting summary judgment de novo, which means that we apply the same standards as the trial court." (Citations omitted.) *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio

App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.). With these standards in mind, we will consider Seege's claims.

{¶ 12} As a general rule, R.C. 2744.02(A)(1) exempts political subdivisions from liability for injuries caused by the acts of the political subdivisions or their employees. Specifically, R.C. 2744.02(A)(1) provides that "[e]xcept as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

{¶ 13} Consistent with this exception, R.C. 2744.02(B)(1) states that political subdivisions "are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority." However, R.C. 2744.02(B)(1)(a) goes on to grant a full defense to this liability when "[a] member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct * * *."

{¶ 14} In *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, the Supreme Court of Ohio interpreted the meaning of an "emergency call" as used in R.C. 2744.01(B)(1)(a). *Id*. at ¶ 1. In its decision, the court rejected the idea that an emergency call "must involve an inherently dangerous situation." *Id.* at ¶ 2. Instead, the court held that an emergency call only "requires a 'call to duty.'" *Id*.

{¶ 15} When considering this issue, the court first reviewed the words in the statute,

which specifically states that " 'emergency call' means '*a call to duty*.' " (Emphasis in original.) *Id.* at ¶ 13, quoting R.C. 2744.01(A). The court noted that " '[d]uty' is defined as 'obligatory tasks, conduct, service, or functions enjoined by order or usage according to rank, occupation, or profession.' Thus, a 'call to duty' involves a situation to which a response by a peace officer is required by the officer's professional obligation." *Id.*, quoting Webster's Third New International Dictionary (1986) 705. The court then stated that:

> Following the term "call to duty," R.C. 2744.01(A) continues with the phrase "*including, but not limited to*, communications from citizens, police dispatches, and personal observations by peace officers *of inherently dangerous situations* that demand an immediate response on the part of a peace officer." (Emphasis added.) The phrase "including, but not limited to," " 'indicates that what follows is a *nonexhaustive* list of examples.' " (Emphasis added.) *State v. Thompson* (2001), 92 Ohio St.3d 584, 588, 752 N.E.2d 276, quoting *State v. Lozano* (2001), 90 Ohio St.3d 560, 562, 740 N.E.2d 273. Examples are typically intended to provide illustrations of a term defined in the statute, but do not act as limitations on that term. Moreover, of the three examples listed in R.C. 2744.01(A), only the third example, "personal observations by peace officers of *inherently dangerous situations* that demand an immediate response on the part of a peace officer," refers to a dangerous situation, thereby indicating that the other listed examples need not involve an inherently dangerous situation. Therefore, we find that the phrase "inherently dangerous situations" places no limitation on the term "call to duty."

Had the General Assembly intended to limit an emergency call to only those situations that were inherently dangerous, it could have expressly imposed that limitation. Because no such limiting language exists in R.C. 2744.01(A), we will not add it by judicial fiat. Accordingly, we hold that an "emergency call" as defined in R.C. 2744.01(A) involves a situation to which a response by a peace officer is required by the officer's professional obligation.

*Colbert* at ¶ 14-15.

{¶ 16} The trial court relied on this interpretation in finding that Smith was on an emergency call under R.C. Chap. 2744, i.e., he was responding to a call to duty because he "was fulfilling his professional obligation when the unfortunate accident occurred." Doc. #71, p. 6.

{¶ 17} Seege argues that even under *Colbert's* interpretation, not every professional duty performed by a police officer while operating a motor vehicle can constitute an emergency call for purposes of the statute. According to Seege, the use of the word "emergency" in R.C. 2744.01(A) implies that an officer must be responding to a sudden or unexpected occasion for action or a pressing necessity, in order for the statute to apply. Seege also distinguishes *Colbert*, since it involved police officers who had witnessed a drug deal and gave chase. *See Colbert*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, at ¶ 3. In addition, Seege places reliance on Smith's admission that he was acting on a non-emergency basis.

{¶ 18} As an initial matter, Smith's characterization of his status is irrelevant. The Supreme Court of Ohio rejected the idea of such an "admission" in *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 44, fn. 5. In this regard, the court observed that:

Smith implies that Carpenter's statement that he was not on an emergency run

should equate to an admission that he was not on an emergency call for R.C. Chapter 2744 purposes. However, an emergency run pursuant to the police department's protocols and an emergency call for purposes of statutory immunity are different. For purposes of evaluating whether immunity attaches, even when an officer is not on an emergency run, he may still be responding to a call to duty and thus be acting under a professional obligation to respond. *See Colbert*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, at the syllabus.

*Smith* at ¶ 44, fn. 5.

{¶ 19}    In support of her position, Seege cites a number of cases in which courts have either found conflicts in evidence concerning whether an officer was responding to an emergency call, or have found that officers may perform functions that involve operation of a cruiser, but may not be on an "emergency call."

{¶ 20}    For example, in *Malone v. Torres*, 8th Dist. Cuyahoga No. 92878, 2010-Ohio-157, the court of appeals found that summary judgment on immunity had been properly denied due to conflicting evidence about whether an emergency call existed. *Id.* at ¶ 15. The court first distinguished "the traffic violations, i.e., speeding and improper lane changing, in the case at bar * * * from high-crime area drug deal observation and necessary stealth pursuit in *Colbert*." *Id.* at ¶ 19. In this regard, the court stressed that:

It is questionable that speeding or improper lane changing, without personal observation of more serious crimes, is worth putting citizens' lives at risk. Therefore, allowing immunity in a situation where officers failed to use their lights and sirens or even make a dispatch call to the police station before racing

through an intersection against the light becomes a question of fact.

*Malone* at ¶ 19.

{¶ 21}  The court of appeals then went on to find that there were factual issues precluding summary judgment in the city's favor.  In particular, the court focused on the officers' failure to follow procedure, failure to notify anyone of their alleged vehicle chase, and "self-serving" testimony.  *Id.* at ¶ 7 and 26.  The court also noted that the victims, who were struck by the police cruiser, testified that no vehicle had traveled through the intersection immediately before the accident.  This contrasted with the officers' testimony that they had been chasing a vehicle through the intersection.  *Id.* at ¶ 22.  There were also factual issues with regard to whether the officers had activated the lights and sirens on their cruiser before colliding with the victims' automobile.  *Id.*

{¶ 22}  Similarly, in *Baker v. Cleveland*, 8th Dist. Cuyahoga No. 93952, 2010-Ohio- 5588, the court of appeals concluded that the trial court did not err in denying a city's motion for directed verdict on the immunity issue.  *Id.* at ¶ 26. The court noted conflicting testimony and credibility issues about whether the officer was responding to a call to duty (a property damage accident that the officer had not notified dispatch about) or whether he was traveling to a parade assignment, which had been conceded by the city as a non-emergency situation.  *Id.* at ¶ 23-25.

{¶ 23}  In yet another case cited by Seege, the court of appeals concluded that reasonable minds could differ regarding whether an officer was responding to a "call to duty," i.e., "required by his professional obligation to respond to the call," under *Colbert*.  *See Brown v. Cuyahoga Falls*, 9th Dist. Summit No. 24914, 2010-Ohio-4330, ¶ 16. In *Brown*, the officer did

not observe any illegal activity and was not dispatched to a crime scene. Instead, he unilaterally elected to respond to a dispatch and did not respond to the radio transmission about the alleged crime. *Id.* at ¶ 15.

{¶ 24} These types of factors are absent in the case before us. There is no factual dispute about what occurred. Unlike the officers in *Malone*, *Baker*, and *Brown*, Smith had been dispatched to a traffic accident and was responding to that dispatch at the time his vehicle collided with Seege's wheelchair.

{¶ 25} We do agree with Seege to the extent that not every function performed by a police officer may fit within the definition of an emergency call. In *Burnell v. Dulle*, 169 Ohio App.3d 792, 795-796, 2006-Ohio-7044, 865 N.E.2d 86 (12th Dist), the court of appeals concluded that a deputy who ran over a pedestrian's foot in a courthouse parking lot was not on an emergency call for purposes of R.C. 2744.01(A). *Id.* at ¶ 3 and 15-16. At the time, the officer was driving to court to testify in response to a subpoena. *Id.* at ¶ 2.

{¶ 26} In rejecting immunity, the court of appeals stated that:

The fact that Deputy Dulle was an on-duty police officer driving to court to testify at the time of the incident does not make this an emergency call. We recognize that the Ohio Supreme Court held that an "emergency call" is not limited to inherently dangerous situations that demand an immediate response. *See Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 11–15. The high court held that an "emergency call" as defined in R.C. 2744.01(A) "involves a situation to which a response by a peace officer is required by the officer's professional obligation." *Id.* at ¶ 15. But we do not find

that the *Colbert* court's analysis requires that the phrase "emergency call" be so broadly construed as to encompass the facts of this case.

It was not Deputy Dulle's professional duty, but his civic duty, to respond to the subpoena. The fact that the subject matter of his testimony involved the officer's official duties does not render driving to the city building to testify about the subject an emergency call. Deputy Dulle's professional obligations were not engaged while he was driving to the courthouse. Thus, this case is distinguishable from those cited by Warren County for support of its argument. *See, e.g., Cunningham v. Akron*, Summit App. No. 22818, 2006-Ohio-519, 2006 WL 290100; *Rutledge v. O'Toole*, Cuyahoga App. No. 84843, 2005-Ohio-1010, 2005 WL 563727; *Kintyhtt v. Barberton*, Summit App. No. 22468, 2005-Ohio-3799, 2005 WL 1763606.

*Burnell* at ¶ 15-16.

{¶ 27} Seege contends that the trial court interpreted *Colbert* too expansively, by interpreting "any" professional responsibility as an emergency call. We disagree. The trial court properly concluded that Smith was responding to a call to duty because he had been dispatched to respond to a traffic accident. *Colbert* and its progeny do not require that the situation to which an officer is sent be inherently dangerous, or even that the police department itself classify the situation as an emergency. Unlike the situations in the cited cases, Smith was responding to a call to duty for purposes of statutory immunity.

{¶ 28} Seege's next argument is that Smith was acting in a wanton manner. As was noted, the immunity exception in R.C. 2744.02(B)(1)(a) does not permit immunity even where an

officer is responding to an emergency call, if the vehicle's operation constitutes "willful or wanton misconduct." According to Seege, Smith's conduct in taking his eyes off the road for four to five seconds and failing to take any measures to avoid pedestrians when he knew they might use the unmarked crosswalk, was wanton misconduct.

{¶ 29} "[T]he issue of wanton misconduct is normally a jury question." (Citation omitted.) *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994). We have noted that "wanton misconduct involves the failure to exercise any care toward one to whom a duty is owed when the failure occurs under circumstances for which the probability of harm is great and when the probability of harm is known to the tortfeasor." *Carder v. Kettering*, 2d Dist. Montgomery No. 20219, 2004-Ohio-4260, ¶ 20, citing *Hunter v. Columbus*, 139 Ohio App.3d 962, 969, 746 N.E.2d 246 (10th Dist. 2000), and *Matkovich v. Penn Cent. Transp. Co.*, 69 Ohio St.2d 210, 431 N.E.2d 652 (1982), paragraph two of the syllabus.

{¶ 30} Even accepting Seege's factual assertions as true, we cannot conclude that Smith's actions were wanton. The officer in *Carder* was traveling at more than 80 miles per hour in a residential zone, and was traveling uphill in an area that limited his visibility as well as that of other motorists. *Carder* at ¶ 24. In contrast, Smith was traveling only a few miles above the speed limit, in an area where his visibility was not limited. Notably, even in *Carder*, we did not find that the officer failed to exercise any care whatsoever and that his actions were wanton *Id.* at ¶ 20. Accordingly, we agree with the trial court that Smith's actions were not wanton. As a result, the City of Dayton was entitled to statutory immunity under R.C. 2744.02(B)(1)(a) for the claims asserted by Seege.

{¶ 31} Seege's final argument is that there are factual issues regarding whether Smith

acted recklessly for purposes of his individual immunity under R.C. 2744.03(A)(6). "For claims against individual employees, the three-tiered analysis used to determine whether a political subdivision is immune is not used. Instead, R.C. 2744.03(A)(6) provides that an employee is personally immune from liability unless '(a) [t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or] (c) [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code.' " (Citations omitted). *Lambert v. Clancy,* 125 Ohio St.3d 231, 2010-Ohio-1483, 927 N.E.2d 585, ¶ 10. "For these purposes, allegations of negligence are insufficient to overcome the immunity granted to an employee of a political subdivision who acts within his or her official duties." *Id.*, citing *Fabrey*, 70 Ohio St.3d at 356, 639 N.E.2d 31.

{¶ 32} The relevant exception here is wanton or reckless conduct. We have already concluded that Smith did not act in a wanton manner, which leaves the issue of Smith's alleged recklessness. " 'An individual acts "recklessly" when he "does an act or intentionally fails to do an act which is in his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." ' " *Carder*, 2d Dist. Montgomery No. 20219, 2004-Ohio-4260, at ¶ 22, quoting *Hunter*, 139 Ohio App.3d at 969, 746 N.E.2d 246. See also, *Anderson v. Massillon,* 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 34 (noting that "reckless conduct is characterized by a substantial and unjustifiable risk of harm to others and a conscious disregard of or indifference to the risk, but the actor does not desire harm").

**{¶ 33}** In *Carder*, we concluded that a reasonable juror could find a police officer's actions reckless, in view of the officer's "speed [more than 80 miles per hour in a 35 mile per hour zone], the limited visibility and the residential character of the area." *Carder* at ¶ 25. Again, those factors are absent in the case before us. Although there were some residences in the area of James H. McGee Boulevard and West Second Street, the road upon which Smith was traveling was a busy thoroughfare, with commercial establishments in the area as well. In addition, Smith's speed was only slightly in excess of the posted speed, and visibility was not limited. One might characterize Smith's actions as negligent, but they do not rise to the level of recklessness.

**{¶ 34}** In arguing that Smith's conduct was reckless, Seege relies on the testimony of her expert, who stated that Smith's behavior was "grossly neglectful and reckless." *See* Affidavit of Stuart Nightenhelser, ¶ 12, attached to Doc. # 60. This assertion, however, is considered an improper legal conclusion that should not be submitted in affidavits used to show genuine issues of material fact. *Fediaczko v. Mahoning Cty. Children Servs.*, 7th Dist. Mahoning No. 11 MA 186, 2012-Ohio-6090, ¶ 30. *See, also*, *Pope v. Trotwood Madison City School Dist. Bd. of Edn.*, 2d Dist. Montgomery No. 20072, 2004-Ohio-1314, ¶ 17.

**{¶ 35}** Furthermore, "just because a plaintiff can find an expert to state in an affidavit that an act was reckless does not mean that there is a genuine issue for trial as to whether the defendant lost her immunity due to recklessness." *Fediaczko* at ¶ 31. " '[A]lthough the determination of recklessness is typically within the province of the jury, summary judgment is appropriate in instances where the individual's conduct does not demonstrate a disposition to perversity.' " (Citations omitted.) *Lindsey v. Summit Cty. Children Servs. Bd.*, 9th Dist.

Summit No. 24352, 2009-Ohio-2457, ¶ 19, quoting *Fields v. Talawanda Bd. of Edn.*, 12th Dist. Butler No. CA2008-02-035, 2009-Ohio-431, ¶ 16.

**{¶ 36}** After reviewing the record, we find no evidence of a disposition to perversity on Smith's part, nor do we find a conscious disregard of risk to others. Instead, this unfortunate accident appears to have been the result of Smith's momentary inattention to the road. Again, Smith's conduct may have been negligent, but it does not rise to the level of recklessness. As a result, the trial court did not err in concluding that Smith was individually immune for Seege's injuries.

**{¶ 37}** Based on the preceding discussion, Seege's sole assignment of error is overruled.

### III.   Conclusion

**{¶ 38}** Seege's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J., concurs.

FROELICH, P.J., concurring:

**{¶ 39}** Officer Smith had been dispatched to a specific location and had a professional obligation to respond. He therefore fell within the statutory definition of "emergency call" as interpreted by The Supreme Court in *Colbert*. Appellant's reasoning about the seemingly self-contradictory meaning of a non-emergency, emergency call would have to, in turn, be resolved by that same Supreme Court.

. . . . . . . . . . . . .

Copies mailed to:

Dwight Brannon
Douglas D. Brannon
Matthew C. Schultz
Neil F. Freund
Leonard J. Bazelak
John J. Danish
John C. Musto
Todd Smith
Margaret Schutte
Hon. Barbara P. Gorman