[Cite as *Wilson v. Gregory*, 2023-Ohio-4782.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| SARAH WILSON, ADMINISTRATOR OF THE ESTATE OF JACK HUELSMAN, et al., | : | CASE NO. CA2023-06-039 |
|  | : |  |
| Appellants, | : | O P I N I O N<br>12/28/2023 |
|  | : |  |
| - vs - | : |  |
|  | : |  |
| ERIC GREGORY, et al., | : |  |
| Appellees. | : |  |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2021 CVC 01001

Friedman Gilbert + Gerhardstein, and M. Caroline Hyatt and Jacqueline Greene, for appellants.

Mark Tekulve, Clermont County Prosecuting Attorney, and Brian C. Shrive and Jeanette E. Nichols, assistant prosecuting attorneys, for appellees.

**M. POWELL, J.**

{¶ 1} Appellants, Sarah Wilson, the administrator of the Estate of Jack Huelsman, and Cheryl Huelsman, appeal a decision of the Clermont County Court of Common Pleas granting summary judgment to appellees, Eric Gregory and Meredith Walsh, both deputies

with the Clermont County Sheriff's Office.[1]

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} This case concerns the tragic death of Jack who died on September 19, 2015, of a self-inflicted gunshot wound. Cheryl was Jack's wife; Sarah is their daughter. Jack suffered from bipolar disorder and had terminal cancer. Cheryl is a former nurse who has encountered people experiencing mental health crises and who was on family medical leave to care for Jack. On the morning of September 19, 2015, Jack accused Cheryl of playing recordings of political speeches outside his bedroom, taking and crumpling Korean money, stealing his wallet and keys, and sabotaging his electronic devices. Distressed, Cheryl called Sarah, informed her that Jack was paranoid and agitated and experiencing a mental health episode in which he was hearing voices, and asked for help calming Jack. According to Sarah, once on the phone, Jack repeated his delusions to Sarah and told her that he was a prisoner in his own home, that he did not have a reason to live, and that if he killed himself, Cheryl would be unable to keep their home because she would not get life insurance. He then said goodbye to Sarah and hung up. Sarah called Cheryl back and they decided to call 9-1-1; however, because Cheryl felt she could not do so within Jack's earshot, Sarah made the call.

{¶ 3} Sarah called Clermont County Emergency Services at 12:06 p.m. and informed dispatch that Jack was having a psychiatric emergency, was mentally ill and bipolar, was hearing voices, was thinking of committing suicide, and had been on a downward mental decline. She further informed dispatch that there were guns in the home. At 12:08 p.m., Deputy Gregory was dispatched to the Huelsman home along with an EMS unit. Dispatch informed Gregory that the call was for a "64-year-old male hearing voices."

---

1. Gregory and Walsh will be collectively referred to as "the Deputies," and individually by their last name. Jack and Cheryl Huelsman and Sarah Wilson will be referred to by their first name.

EMS was dispatched for a patient with abnormal behavior and was directed to stage near the Huelsman residence. Deputy Walsh separately responded to the Huelsman residence.

{¶ 4} Gregory arrived first and was admitted into the home where he found Cheryl sitting on the couch and Jack sitting in a recliner. Cheryl was upset and crying; Jack was calm. Seeing no signs of physical injury, Gregory advised EMS to stand down. Cheryl advised Gregory that Jack was paranoid, hearing voices, and accusing her of causing his electronic devices to stop working. Jack explained that he was not hearing voices, that he had heard someone talking about politics, and that he eventually realized a radio was on. Jack confirmed that his electronics were not working properly, and Cheryl was unable to confirm this one way or the other. Gregory advised Cheryl that based upon their conversation, he was not going to remove Jack from the house. Cheryl advised Gregory that Jack was completely out of his mind, that this was not his normal behavior, and that contrary to Gregory's belief, this was not a domestic dispute but a mental health crisis. During their interaction, Cheryl informed Gregory that all the firearms were locked up and that only she had access to them.

{¶ 5} Because Cheryl and Jack were becoming upset with one another, Gregory believed it best that they be separated. Gregory had Cheryl step out of the house. On the porch, Cheryl told Gregory multiple times that Jack needed to go to a hospital and should not be left alone but did not explain why. Cheryl was distraught and difficult to understand. Gregory advised her that he did not have enough probable cause to remove Jack from their home and transport him to the hospital. Cheryl then told Gregory that Jack was suicidal. Upon hearing Cheryl, Jack yelled from the house that all he said was that if he ever killed himself, Cheryl could not afford to live in the house. Cheryl confirmed that Jack had made the statement and told Gregory that the statement was a suicidal threat. Gregory did not construe it as such. Gregory and Cheryl then walked away from the house out of Jack's

earshot. Cheryl was very emotional and sobbing uncontrollably.

{¶ 6} Deputy Walsh arrived while Gregory was outside on the porch speaking with Cheryl. Walsh stayed outside with Cheryl while Gregory returned inside the home to speak with Jack. Jack told Gregory that he was upset Cheryl had taken and locked up all his firearms and hidden the keys. Jack further stated that Cheryl had taken his car keys and driver's license, "basically taking away his freedom." Jack expressed his belief that Cheryl was "trying to do everything she could to get him locked up, put away, out of the house." Gregory believed Jack to be calm, rational, and composed during this conversation. Based upon Jack's demeanor, inflection, and conduct, Gregory did not consider Jack to be suicidal.

{¶ 7} Meanwhile, Cheryl advised Walsh that all of the firearms had been hidden or locked up. Cheryl also stated that she could not leave because she believed Jack would kill himself if she did. According to Walsh, Cheryl never asked that Jack not be left alone and further stated she had not heard Jack make any threats to harm himself. Cheryl was extremely upset while talking to Walsh because she wanted Jack to be taken to a hospital. Upset and frustrated, Cheryl eventually threw her hands up and walked away.

{¶ 8} The Deputies subsequently consulted with one another and determined that based upon their respective conversations with the Huelsmans, they did not have probable cause to transport Jack to a hospital because they had no reason to believe Jack was a danger to himself or others. Walsh left shortly thereafter to respond to a "non-breather" call. Gregory returned to his patrol car and contacted his supervisor for authorization to call Mobile Crisis, a mental health service, to respond to the scene and speak with the Huelsmans. Gregory then returned to the house and advised Jack that Mobile Crisis was on its way to talk to him. Jack informed Gregory that he had terminal cancer and that Cheryl was his nurse.

{¶ 9} Gregory went back outside, where he observed Cheryl "crying uncontrollably"

- 4 -

kneeling down by a tree, and took a follow-up call from Mobile Crisis inside his patrol car. From the car, Gregory observed Jack walk out onto the porch and look around for a few minutes before walking back into the house. While Gregory was inside his car writing down the Huelsmans' information, Jack shot and killed himself.[2]

{¶ 10} On August 22, 2017, Sarah, as administrator of Jack's estate, and Cheryl filed a complaint in in the United States District Court for the Southern District of Ohio against the Deputies, asserting federal and state claims. The district court granted summary judgment in favor of the Deputies on all claims. *Wilson v. Gregory*, 491 F.Supp.3d 299 (S.D.Ohio 2020). In particular, the district court found that the Deputies were entitled to immunity under R.C. 2744.03(A)(6) on the state claims. On appeal, the Sixth Circuit Court of Appeals affirmed the grant of summary judgment on the federal claims but reversed the district court's grant of summary judgment on the state claims, finding there were genuine issues of material fact regarding whether the Deputies acted recklessly and were entitled to statutory immunity. *Wilson v. Gregory*, 3 F.4th 844 (6th Cir.2021). The Sixth Circuit remanded the case to the district court. On remand, the district court declined to exercise jurisdiction on the state claims and dismissed them without prejudice. *Wilson v. Gregory*, S.D.Ohio No. 1:17 CV 554, 2021 U.S. Dist. LEXIS 155609 (Aug. 18, 2021).

{¶ 11} On October 27, 2021, Sarah, as administrator of Jack's estate, and Cheryl filed a complaint in the Clermont County Court of Common Pleas against the Deputies and an amended complaint two months later. Both complaints asserted claims for negligence/reckless conduct, wrongful death, intentional infliction of emotional distress, and negligent infliction of emotional distress. The Deputies moved for summary judgment,

---

2. In her deposition, Cheryl testified that of the numerous firearms Jack possessed, all but three handguns were locked in gun safes. In 2013 and 2014, she had found two of the handguns under Jack's pillow and had hidden them. The third handgun was partially taken apart because Jack was working on it; it was kept in the drawer of a side table sitting next to Jack's recliner. Cheryl testified she did not realize at the time that the handgun was operational.

arguing they were entitled to statutory immunity under R.C. 2744.03(A)(6)(b). In her memorandum opposing summary judgment, Cheryl argued that the Deputies were collaterally estopped from relitigating the issue of recklessness because the issue had already been determined in the federal court action.[3]

{¶ 12} On May 30, 2023, the trial court granted summary judgment in favor of the Deputies, holding that "reasonable minds can come to only one conclusion: that there is no evidence the defendants acted in a reckless manner." The trial court declined to apply the doctrine of collateral estoppel, finding that Cheryl had not proven two elements of the doctrine because the court could not take judicial notice of the record in the federal litigation.

{¶ 13} Cheryl now appeals, raising one assignment of error:

{¶ 14} THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

{¶ 15} Cheryl argues that the trial court erred in granting summary judgment to the Deputies, raising two issues for review. In her first issue for review, Cheryl challenges the trial court's finding that collateral estoppel does not apply to bar the Deputies from relitigating the issue of recklessness. In her second issue for review, Cheryl challenges the trial court's finding that the Deputies did not act in a reckless manner.

{¶ 16} An appellate court reviews a trial court's decision on a motion for summary judgment de novo, independently and without deference to the decision of the trial court. *Flagstar Bank, FSB v. Sellers*, 12th Dist. Butler No. CA2009-11-287, 2010-Ohio-3951, ¶ 7. The appellate court examines the evidence available in the record, including deposition or hearing transcripts, stipulated exhibits, and the pleadings, and determines whether summary judgment is appropriate. *Smathers v. Glass*, Slip Opinion No. 2022-Ohio-4595,

---

3. In her memorandum opposing summary judgment, Cheryl abandoned her claim of negligent infliction of emotional distress and her claims that the Deputies acted maliciously, in bad faith, or in a wanton manner.

¶ 30; Civ.R. 56(C). Summary judgment is proper when there is no genuine issue of material fact remaining for trial, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion adverse to the nonmoving party, construing the evidence most strongly in that party's favor. *See* Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

## II. ANALYSIS

### A. Collateral Estoppel

{¶ 17} Under her first issue for review, Cheryl argues that the trial court erred in declining to apply collateral estoppel. Cheryl asserts that the trial court improperly granted summary judgment to the Deputies on a ground not raised in the Deputies' motion for summary judgment, i.e., judicial notice. Cheryl further asserts that the Sixth Circuit's reversal of the district court's grant of summary judgment in favor of the Deputies was a "final judgment on the merits" on the issue of the Deputies' entitlement to statutory immunity based upon recklessness, thereby barring the Deputies from relitigating the issue of recklessness.

{¶ 18} The doctrine of res judicata is composed of two concepts: claim preclusion, also referred to as "estoppel by judgment," and collateral estoppel, also referred to as "issue preclusion." *Ginn v. Stonecreek Dental Care*, 12th Dist. Fayette No. CA2016-10-014, 2017-Ohio-4370, ¶ 24. Collateral estoppel prevents parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit. *Thompson v. Wing*, 70 Ohio St.3d 176, 183, 1994-Ohio-358. "Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *Id.* To successfully assert collateral estoppel, a party must plead and prove the following elements:

(1) The party against whom estoppel is sought was a party or in privity with a party to the prior action;

(2) There was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;

(3) The issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and

(3) The issue must have been identical to the issue involved in the prior suit.

*Ginn* at ¶ 24. A state court may apply collateral estoppel when an issue has previously been decided in a federal court involving the same parties or their privies. *State v. Ross*, 4th Dist. Summit No. 26694, 2014-Ohio-2867, ¶ 22.

{¶ 19} "'Offensive collateral estoppel' occurs when a plaintiff seeks to foreclose a defendant from litigating an issue the defendant has previously litigated unsuccessfully in a prior action." *Wilson v. Hatter*, 12th Dist. Warren Case No. CA85-04-014, 1986 Ohio App. LEXIS 7297, *7-8 (June 23, 1986), citing *Parklane Hosiery Co., Inc.* v. *Shore* (1979), 439 U.S. 322, 99 S.Ct. 645 (1979). Caution must be exercised before permitting the use of offensive collateral estoppel. *Id.*

### 1. Judicial Notice

{¶ 20} The trial court declined to apply collateral estoppel, finding that Cheryl had not proven the doctrine's second and third elements because the court could not take judicial notice of the record in the federal litigation. The issue of judicial notice was never raised in the Deputies' motion for summary judgment. Cheryl argues that the trial court erred in declining to apply collateral estoppel on a ground not raised in the Deputies' motion for summary judgment thereby denying Cheryl an opportunity to respond.

{¶ 21} "A party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." *Mitseff v. Wheeler*, 38 Ohio St.3d 112 (1988), paragraph one of

the syllabus. The moving party must state with particularity the areas of the opposing party's claim that do not raise a genuine issue of material fact and such assertion may be supported by evidence as allowed by Civ.R. 56(C). *Id.* at 115. Generally, a trial court may not sua sponte grant summary judgment upon grounds not raised by the prevailing party. *Marshall v. Aaron*, 15 Ohio St.3d 48, 50-51 (1984). However, a trial court does not deprive a party of a meaningful opportunity to respond where the party has notice of an issue. *Total Quality Logistics, L.L.C. v. Red Chamber Co.*, 12th Dist. Clermont No. CA2016-09-062, 2017-Ohio-4369, ¶ 9.

{¶ 22} Res judicata, and therefore its collateral estoppel subcategory, is an affirmative defense under Civ.R. 8(C). *See Calin v. Nemes*, 7th Dist. Mahoning No. 11 MA 12, 2012-Ohio-1409. While a party moving for summary judgment has the burden to prove its case, it does not have the burden to address, negate, or disprove the nonmoving party's affirmative defenses. *Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, ¶ 13, 23. The Deputies' motion for summary judgment did not anticipatorily argue that collateral estoppel did not apply. On the contrary, Cheryl introduced the doctrine of collateral estoppel in her memorandum in opposition to the Deputies' motion for summary judgment. Pursuant to *Todd* and Civ.R. 56(E), it was Cheryl's obligation to do so because "an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

{¶ 23} "Judicial notice concerns a court's acceptance, 'for purpose of convenience and without requiring a party['s] proof, of a well-known and indisputable fact[.]'" *Charles v. Conrad*, 10th Dist. Franklin No. 05AP-410, 2005-Ohio-6106, ¶ 26. A trial court cannot take judicial notice of court proceedings in another case, and may not take judicial notice of prior proceedings in the court even if the same parties and subject matter are involved; a court

may only take judicial notice of the proceedings in the immediate case. *Mansour v. Croushore*, 194 Ohio App.3d 819, 2011-Ohio-3342, ¶ 18 (12th Dist.). The rationale for the rule is that the appellate court cannot review the propriety of the trial court's reliance on such prior proceedings because that record is not before the appellate court. *Id.* "The taking of judicial notice involves consideration of evidence outside the complaint." *Lansing v. Hybud Equip. Co.*, 5th Dist. Stark No. 2002CA00112, 2002-Ohio-5869, ¶ 16. "Consideration of evidence taken by judicial notice is not enumerated in Civ.R. 56(C)." *Id.* at ¶ 17.

{¶ 24} The trial court did not err in sua sponte raising the issue of judicial notice. The trial court found that the Sixth Circuit's decision did not satisfy the second and third elements of collateral estoppel because to make such a determination required a review of the record in the federal litigation which was not properly before the trial court. The trial court noted that each party represented what happened in the federal litigation and sought, improperly, to file Cheryl's federal complaint and a website link for the oral arguments before the Sixth Circuit without complying with Civ.R. 56(C). In other words, the parties improperly sought to submit filings and evidence from the federal proceedings in their summary judgment pleadings. Because the trial court could not take judicial notice of another court's proceedings, the trial court properly found it could not take judicial notice of the parties' representations or the record before the federal courts.

{¶ 25} Furthermore, contrary to Cheryl's assertion, the trial court did not grant summary judgment to the Deputies on a ground not sought by them. Rather, the trial court found that Cheryl had failed to prove the necessary elements for collateral estoppel to apply. Cheryl had notice of the issue of collateral estoppel because she raised it.

### 2. Whether Collateral Estoppel Applies

{¶ 26} In the federal litigation, the district court granted summary judgment in favor

of the Deputies, finding that there was no genuine issue of material fact that the Deputies had acted recklessly, and that the Deputies were immune from liability upon the state claims under R.C. Chapter 2744. The Sixth Circuit reversed the district court's grant of summary judgment on the state claims, finding that genuine issues of material fact remained regarding whether the Deputies acted recklessly and were entitled to statutory immunity. In reversing the grant of summary judgment, the Sixth Circuit also found that the district court applied an improper standard for recklessness by conflating deliberate indifference and recklessness.

{¶ 27} In the case at bar, the trial court declined to apply collateral estoppel as follows:

> The Civ.R. 56 evidence before the court does not include essential portions of the record from [the federal litigation], and therefore the plaintiffs have not established that all four requirements for collateral estoppel are satisfied. The court cannot evaluate whether there was a final judgment on the merits in [the federal litigation] after a full and fair opportunity to litigate the issue of recklessness for sovereign immunity, nor can the court determine whether recklessness was admitted or actually tried and decided and was necessary to the final judgment. As the Ohio Supreme Court stated, " an absolute due process requisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action." [quoting *Goodson v. McDonough Power Equipment, Inc.*, 2 Ohio St.3d 193, 201 (1983)].

{¶ 28} Cheryl argues that the trial court erred in declining to apply collateral estoppel. Cheryl asserts that the Sixth Circuit's reversal of the district court's grant of summary judgment is a final judgment on the merits of the federal case after the Deputies had a full and fair opportunity to litigate the issue, thereby satisfying collateral estoppel's second element. Cheryl further asserts that the Sixth Circuit decided the issue of the Deputies' entitlement to statutory immunity under R.C. Chapter 2744 and that the Sixth Circuit's

decision was necessary to the final judgment, thereby satisfying collateral estoppel's third element.

{¶ 29} The reversal of the district court's grant of summary judgment to the Deputies on state law statutory immunity is not a "final judgment on the merits" as required by the second element of collateral estoppel. The merits of the Deputies' immunity claim remain unresolved because the Sixth Circuit only held that there were genuine issues for trial regarding whether the Deputies were entitled to immunity. In other words, the Sixth Circuit did not find that the Deputies acted recklessly and that they were not entitled to immunity under R.C. Chapter 2744. Rather, the Sixth Circuit reversed the grant of summary judgment to the Deputies, finding genuine issues of material fact remained regarding whether the Deputies acted in a reckless manner and were entitled to statutory immunity. Because each of these issues may ultimately be resolved in the Deputies' favor after a trial, the Sixth Circuit's reversal is not a final judgment on the merits. For the same reasons, the issues of recklessness and statutory immunity were not "actually tried and determined," that is conclusively determined, in the federal litigation, as required by the third element of collateral estoppel.

{¶ 30} In oral argument, Cheryl suggested that the Sixth Circuit's reversal of the district court's grant of summary judgment is a final judgment on the merits because R.C. 2744.02(C) provides that "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." R.C. 2744.02(C) is inapplicable because, as discussed above, the Sixth Circuit did not deny the Deputies immunity under R.C. Chapter 2744, but held only that there were genuine issues of material fact as to whether the Deputies were entitled to state law immunity. The case was then remanded to the district court which declined to exercise supplemental jurisdiction and dismissed the

state law claims without prejudice. In leaving the state law claims for state adjudication, the district court specifically noted that "a core defense" to the remaining claims involved Ohio statutory immunity for law enforcement officers, "an evolving topic of law."

**{¶ 31}** In light of the foregoing, we find that collateral estoppel was not applicable and the trial court did not err in declining to apply the doctrine.

## B. **Recklessness**

**{¶ 32}** Under her second issue for review, Cheryl argues that the trial court erred in finding that the Deputies' conduct was not reckless because (1) the trial court applied the wrong definition of recklessness for purposes of R.C. 2744.03(A)(6), and (2) there were genuine issues of material fact regarding whether the Deputies acted recklessly.

### 1. **The Recklessness Standard**

**{¶ 33}** The Deputies argued they were entitled to statutory immunity under R.C. 2744.03(A)(6)(b). That statute provides immunity to an employee of a political subdivision unless "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Demonstrating "wantonness" or "recklessness" is subject to a high standard. *Pressler v. Franklin*, 12th Dist. Warren No. CA2016-06-050, 2017-Ohio-1408, ¶ 12. Thus, although the determination of wantonness or recklessness is typically within the province of the jury, summary judgment is appropriate in instances where there is no evidence that the employees "acted * * * in a wanton or reckless manner." *Id.*

**{¶ 34}** In its decision, the trial court applied a definition of recklessness that included a "perverse disregard of a known risk." Cheryl argues that the trial court erred in applying a definition of recklessness that the Ohio Supreme Court has rejected in *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711.

**{¶ 35}** In 1990, the Ohio Supreme Court adopted the definition of recklessness

articulated by 2 Second Restatement of the Law 2d, Torts, Section 500 (1965). *Id.* at ¶ 29.[4] In *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, the supreme court provided the definition of recklessness from the Restatement, and then defined recklessness as "a perverse disregard of a known risk" and "a disposition to perversity." *Id.* at ¶ 73, 75.

{¶ 36} In *Anderson*, the supreme court addressed the confusion that had arisen about its prior definitions of the terms "wanton," "willful," and "reckless." The court held that the terms described different and distinct degrees of care and were not interchangeable. *Anderson*, 2012-Ohio-5711 at ¶ 31. In reviewing its prior definitions, the court noted that it had "abandoned 'disposition to perversity' as an element of the definition of wanton misconduct" in 1977. *Id.* at ¶ 28. The court then defined recklessness as "the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at ¶ 34. The *Anderson* opinion did not overrule *O'Toole* or reject the *O'Toole* definition of recklessness as involving perversity.

{¶ 37} Following *Anderson*, the supreme court has continued to use the phrase "perverse disregard of a known risk" when defining recklessness pursuant to R.C. 2744.03(A)(6)(b). In *A.J.R. v. Lute*, 163 Ohio St.3d 172, 2020-Ohio-5168, the issue before the court was whether a teacher and school officials acted recklessly regarding reports that a kindergartener was bullied. After citing the definition of recklessness from both *O'Toole* and *Anderson*, the court held that because the teacher and school officials "did not perversely disregard a known risk, appellants could not have been reckless, and the trial court correctly granted [their] motion for summary judgment." *Id.* at ¶ 27; *see also id.* at ¶

---

4. The Restatement provides that "[t]he actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."

1, 22, and 29 (finding that the teacher and school officials "did not act in perverse disregard of a known risk" and "did not perversely disregard" a known risk). Two years later, the supreme court once again defined recklessness with references to both the *O'Toole* and *Anderson* definitions. *Smathers*, 2022-Ohio-4595 at ¶ 33.

**{¶ 38}** In light of the foregoing, we find that the definition of recklessness pursuant to R.C. 2744.03(A)(6)(b) continues to include a perversity component. The trial court, therefore, did not err in defining recklessness as a "perverse disregard of a known risk."

### 2. Whether the Deputies Acted in a Reckless Manner

**{¶ 39}** Cheryl argues that summary judgment was improper because a genuine issue of material fact exists regarding whether the Deputies' conduct was reckless. Specifically, Cheryl asserts that the Deputies unreasonably disregarded the risk of suicide to Jack when Gregory advised EMS to stand down, Walsh left the scene and left Jack alone, and Gregory isolated Jack alone in his home.

**{¶ 40}** In order to find that the Deputies were reckless, "we must determine that they were 'conscious that their conduct would in all probability result in injury.'" *A.J.R.*, 2020-Ohio-5168 at ¶ 23, quoting *O'Toole*, 2008-Ohio-2574 at paragraph three of the syllabus. "In other words, for their condut to have been reckless, [they] must have been more than negligent in regard to the risk; they must have displayed a 'conscious disregard of or indifference to' the risk of physical harm to [Jack] 'that [was] unreasonable under the circumstances.'" *Id.*, quoting *Anderson*, 2012-Ohio-5711 at paragraph four of the syllabus.

**{¶ 41}** We find that the Deputies did not engage in reckless conduct because there is no evidence in the record that they consciously disregarded or were indifferent to a known or obvious risk of harm to Jack. The Deputies were aware they were responding to a mental health call regarding an individual who was hearing voices and had access to firearms. Once the Deputies arrived, Cheryl told Gregory that Jack was suicidal based on Jack's

earlier statement. She also told Walsh that she could not leave because she believed Jack would kill himself, and that she had not heard Jack make any threats to harm himself. In investigating the situation, the Deputies asked Cheryl several questions in an attempt to determine whether Jack had tried or threatened to harm himself. Cheryl was distraught and sobbing while interacting with the Deputies, was difficult to understand, and was unable to articulate why she was upset. By contrast, although Jack became annoyed and agitated with Cheryl, his demeanor remained calm, he denied threatening to harm himself, and he provided logical and sufficient answers to Gregory. Gregory's interactions with Jack did not indicate Jack was a suicide risk. Nevertheless, Gregory sought to have Mobile Crisis respond to further assess the situation. The Deputies were further advised by both Jack and Cheryl that the firearms in the house were either secured or hidden and that only Cheryl had access to them. At no point did Jack or Cheryl indicate that a firearm was not secure or was accessible to Jack. The Deputies' observations at the scene did not corroborate concerns that Jack was suicidal and the Deputies were not reckless in how they proceeded at the scene. Thus, there is no evidence that the Deputies knew that their actions would in all probability result in injury. There was no perverse disregard of a known risk.

{¶ 42} Cheryl argues that the trial court erred in failing to accept the facts in the light most favorable to her when it disregarded the opinion of her expert. The expert's opinion stated that the Deputies disregarded the obvious risk that Jack would commit suicide or engage in acts of self-harm and that their conduct was unreasonable under the circumstances. However, an expert opinion that the conduct of a political subdivision employee was reckless under R.C. 2744.03(A)(b)(6) is an improper legal conclusion that should not be included in an affidavit used to show a genuine issue of material fact. *Seege v. Smith*, 2d Dist. Montgomery No. 26210, 2014-Ohio-5450, ¶ 34; *Fediaczko v. Mahoning Cty. Children Servs.*, 7th Dist. Mahoning No 11 MA 186, 2012-Ohio-6090, ¶ 30.

Furthermore, "just because a plaintiff can find an expert to state in an affidavit that an act was reckless does not mean that there is a genuine issue for trial as to whether the defendant lost [his or her] immunity due to recklessness."  *Seege* at ¶ 35; *Fediaczko* at ¶ 31.

{¶ 43} After reviewing the record de novo and in a light most favorable to Cheryl, we conclude that no genuine issue as to any material fact remains to be litigated and that the Deputies are entitled to judgment as a matter of law because there is no evidence the Deputies acted in a reckless manner and Cheryl abandoned her claim that the Deputies acted maliciously, in bad faith, or in a wanton manner.  The Deputies are entitled to immunity under R.C. 2744.03(A)(6)(b) and to summary judgment.

### III. CONCLUSION

{¶ 44} In light of the foregoing, the trial court did not err in granting summary judgment in favor of the Deputies.  The assignment of error is overruled.

{¶ 45} Judgment affirmed.

S. POWELL, P.J., and BYRNE, J., concur.

- 17 -